JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
JASON C. PANG (Cal. Bar No. 296043)
MIKAELA W. GILBERT-LURIE (Cal. Bar No. 337339)
Assistant United States Attorneys
     1100/1200/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1259/2652/5615
     Facsimile: (213) 894-0141
     E-mail:    alexander.schwab@usdoj.gov
                jason.pang@usdoj.gov
                mikaela.gilbert-lurie@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-569-MEMF-2, 3 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANTS IGNITE INTERNATIONAL BRANDS, LTD. AND SCOTT ROHLEDER'S MOTION TO DISMISS COUNTS ONE THROUGH SIX OF THE INDICTMENT |
| v. | |
| PAUL A. BILZERIAN, et al., | |
| (2)  SCOTT ROHLEDER, and (3)  IGNITE INTERNATIONAL BRANDS, LTD., | Hearing Date: April 10, 2025 Hearing Time: 2:00 p.m. Location:    Courtroom of the             Hon. Maame Ewusi-             Mensah Frimpong |
| Defendants. | Indictment:   September 26, 2024 PTC:          May 7, 2025 Trial:        May 19, 2025 STA Last Day: June 2, 2025 |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Alexander B. Schwab, Jason C. Pang, and Mikaela W. Gilbert-Lurie, hereby files its

opposition to defendant IGNITE INTERNATIONAL BRANDS, LTD. and defendant SCOTT ROHLEDER's motion to dismiss counts one through six of the Indictment (Dkt. 78).

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 1, 2025                 Respectfully submitted,

                                     JOSEPH T. MCNALLY
                                     Acting United States Attorney

                                     LINDSEY GREER DOTSON
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                          /s/
                                     _____
                                     ALEXANDER B. SCHWAB
                                     JASON C. PANG
                                     MIKAELA W. GILBERT-LURIE
                                     Assistant United States Attorneys

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

1

## **TABLE OF CONTENTS**

2    DESCRIPTION                                                          PAGE

3

4    MEMORANDUM OF POINTS AND AUTHORITIES.................................1

5    I.    INTRODUCTION....................................................1

6    II.   STATEMENT OF FACTS..............................................3

7          A.    Defendant P. Bilzerian Is a Convicted Felon and
                 Vexatious Litigant.......................................3
8
                 1.    Defendant P. Bilzerian's Felony Convictions.........3
9
                 2.    Defendant P. Bilzerian's SEC Disgorgement Order.....3
10
                 3.    Defendant P. Bilzerian's Many Bankruptcy
11                     Proceedings.........................................3

12               4.    Defendant P. Bilzerian's Many Contempt Orders.......4

13         B.    Defendants' Charged Fraudulent Schemes...................7

14   III.  LEGAL STANDARD..................................................8

15   IV.   ARGUMENT........................................................9

16         A.    The Court Should Reject Defendants' Improper
                 Collateral Attack on the SEC Disgorgement Order..........9
17
                 1.    Defendants Cannot Collaterally Attack the SEC
18                     Disgorgement Order in This Proceeding...............9

19               2.    Defendants' "Proof of Harm" Argument Is Incorrect...11

20               3.    Other Circuit Courts Have Rejected Defendants'
                       Double Jeopardy Argument Against the SEC
21                     Disgorgement Order..................................12

22         B.    Count One Alleges a Scheme of Affirmative Concealment....14

23         C.    The Court Should Reject Defendants' Improper Factual
                 Challenges to Count One..................................16
24
           D.    The Court Should Reject Defendants' Improper Factual
25               Challenges to Counts Two Through Six in a Motion To
                 Dismiss..................................................17
26
     V.    CONCLUSION......................................................19
27

28

# TABLE OF AUTHORITIES

DESCRIPTION                                                                PAGE

**Cases**

Custis v. United States,
  511 U.S. 485 (1994) .................................... 1, 9, 10, 11

United States v. Garcia,
  2015 WL 13660438 (C.D. Cal. Apr. 28, 2015) ...................... 18

Honeycutt v. United States,
  581 U.S. 443 (2017) ........................................... 14

Hudson v. United States,
  522 U.S. 93 (1997) ............................................ 12

In re Bilzerian,
  153 F.3d 1278 (11th Cir. 1998) ........................... 2, 4, 12

In re Bilzerian,
  276 B.R. 285 (M.D. Fla. 2002) .................................. 4

Kokesh v. SEC,
  581 U.S. 455 (2017) ........................................ 2, 13

Lewis v. United States,
  445 U.S. 55 (1980) ........................................ 10, 11

Liu v. SEC,
  591 U.S. 71 (2020) ..................................... 2, 13, 14

Reiserer v. United States,
  479 F.3d 1160 (9th Cir. 2007) ................................. 13

Schriro v. Summerlin,
  542 U.S. 348 (2004) ........................................... 14

SEC v. Bilzerian,
  29 F.3d 689 (D.C. Cir. 1994) ......................... 2, 3, 11, 12

SEC v. Bilzerian,
  112 F. Supp. 2d 12 (D.D.C. 2000) ............................... 4

SEC v. Bilzerian,
  131 F. Supp. 2d 10 (D.D.C. 2001) ............................... 4

SEC v. Bilzerian,
  613 F. Supp. 2d 66 (D.D.C.) ................................. 5, 6

iv

**TABLE OF AUTHORITIES**

SEC v. Bronson,
  602 F. Supp. 3d 599 (S.D.N.Y. Apr. 29, 2022) ..................... 11

SEC v. Govil,
  86 F.4th 89 (2d Cir. 2023) ....................................... 14

SEC v. Laura,
  2020 WL 8772252 (E.D.N.Y. Dec. 30, 2020) ........................ 11

United States v. Bank,
  965 F.3d 287 (4th Cir. 2020) .................................... 13

United States v. Barker Steel Co.,
  985 F.2d 1123 (1st Cir. 1993) ................................... 15

United States v. Bilzerian,
  926 F.2d 1285 (2d Cir. 1991) ..................................... 3

United States v. Boren,
  278 F.3d 911 (9th Cir. 2002) ..................................... 8

United States v. Buckley,
  689 F.2d 893 (9th Cir. 1982) ......................... 2, 8, 16, 17

United States v. Concord Management & Consulting LLC,
  347 F. Supp. 3d 38 (D.D.C. 2018) ................................ 16

United States v. Delgado,
  592 F. App'x 602 (9th Cir. 2015) ................................ 10

United States v. Dyer,
  908 F.3d 995 (6th Cir. 2018) .................................... 13

United States v. Elias,
  2018 WL 11247848 (C.D. Cal. Jan. 12, 2018) ...................... 18

United States v. Ely,
  142 F.3d 1113 (9th Cir. 1997) ............................... 2, 8, 9

United States v. Filice,
  No. CR 13-8-DLB-CJS-11, 2018 WL 2326616 (E.D. Ky. May 22, 2018) .. 14

United States v. Jensen,
  93 F.3d 667 (9th Cir. 1996) .................................. 8, 17

United States v. Jumper,
  74 F.4th 107 (3d Cir. 2023) ..................................... 13

## **TABLE OF AUTHORITIES**

United States v. Kanchanalak,
    41 F. Supp. 2d 1 (D.D.C. 1999) ................................... 15

United States v. M.C.E.,
    232 F.3d 1252 (9th Cir. 2000) .................................... 10

United States v. Murphy,
    809 F.2d 1427 (9th Cir. 1987) .................................... 15

United States v. Musacchio,
    968 F.2d 782 (9th Cir. 1992) .................................. 8, 17

United States v. Ortiz,
    2018 WL 3304522 (E.D. Pa. July 5, 2018) .......................... 14

United States v. PG&E Co.,
    2015 WL 3958111 (N.D. Cal. June 29, 2015) ........................ 18

United States v. Price,
    51 F.3d 175 (9th Cir. 1995) ...................................... 10

United States v. Sadler,
    77 F.4th 1237 (9th Cir. 2023) .................................... 10

United States v. Stockett,
    270 F. App'x 600 (9th Cir. 2008) ................................. 13

United States v. Varbel,
    780 F.2d 758 (9th Cir. 1986) ..................................... 15

United States v. Yang,
    2024 WL 3904063 (D. N. Mar. I. Aug. 23, 2024) .................... 15

**Statutes**

21 U.S.C. § 851(c) ..................................................... 10

31 U.S.C. 3711(g) ...................................................... 17

Pub. L. No. 99-570 ..................................................... 16

**Regulations**

31 C.F.R. § 901.1 ...................................................... 17

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

Former corporate raider and convicted fraudster Paul Bilzerian ("P. Bilzerian") owes the Securities and Exchange Commission more than $180 million ("SEC Disgorgement Order").  To dodge this judgment, defendant P. Bilzerian has renounced his U.S. citizenship, relocated to St. Kitts, and claimed poverty in connection with ongoing SEC proceedings.  To defraud the United States with respect to this judgment, defendant P. Bilzerian conspired with defendants Scott Rohleder and Ignite International Brands, Ltd., to conceal his assets, financial interest in, and control over defendant Ignite, a "lifestyle" company putatively run by defendant P. Bilzerian's internet influencer son.  The three defendants also perpetrated a securities and wire fraud scheme with respect to defendant Ignite's earnings announcements in 2021: namely, to inflate the appearance of defendant Ignite's success, defendants conspired to backdate documents to claim revenues for 2020 for the sale of vape pens to a shell company controlled by defendant P. Bilzerian.[1]

In their pending motion to dismiss, defendants Rohleder and Ignite challenge count one by recycling the arguments defendant P. Bilzerian previously raised, unsuccessfully, in other federal courts. As in those prior proceedings, the motion fails for multiple reasons:

<u>First</u>, defendants improperly attempt to collaterally attack the SEC Disgorgement Order at issue in count one, but such a claim is not cognizable in this separate criminal case.  <u>See</u> <u>Custis v. United States</u>, 511 U.S. 485 (1994).

---

[1] Defendant Rohleder is charged with tax offenses that are not the subject of the pending motion.

Second, this Court should follow several other federal appellate courts that have already considered and rejected defendant P. Bilzerian's challenges to the SEC Disgorgement Order, which was based in part on injuries to victims, is remedial in nature, and does not constitute punishment. See In re Bilzerian, 153 F.3d 1278 (11th Cir. 1998); SEC v. Bilzerian, 29 F.3d 689 (D.C. Cir. 1994). Defendants' misinterpretation of the scope of Kokesh v. SEC, 581 U.S. 455 (2017), has already been rejected by several federal appellate courts, and their reliance on Liu v. SEC, 591 U.S. 71 (2020), is legally and factually baseless.

Third, defendants' citations to cases involving allegations of failure to disclose are inapposite because, here, count one alleges defendants took affirmative steps to impede the lawful actions of the SEC in collecting the SEC Disgorgement Order.

Finally, defendants' many factual challenges to counts one through six fail to recognize that, for a motion to dismiss, "[t]he allegations of the indictment are presumed to be true." United States v. Buckley, 689 F.2d 893, 897 (9th Cir. 1982). The Court should reject defendants' request for the Court to take the fact-finding duty away from the jury. An "indictment that sets forth the charged offense in the words of the statute itself is generally sufficient," United States v. Ely, 142 F.3d 1113, 1120 (9th Cir. 1997), and this Court should reject the defendants' attempt to litigate the facts of the case before trial.

## II.   STATEMENT OF FACTS

### A.   Defendant P. Bilzerian Is a Convicted Felon and Vexatious Litigant

#### 1.   Defendant P. Bilzerian's Felony Convictions

In September 1989, defendant P. Bilzerian was convicted of nine counts of securities fraud and sentenced to four years in prison. See United States v. Bilzerian, 926 F.2d 1285, 1302 (2d Cir. 1991).

#### 2.   Defendant P. Bilzerian's SEC Disgorgement Order

Following his criminal convictions, the SEC filed a separate civil action against defendant P. Bilzerian.  Based on the evidence from the criminal trial, defendant P. Bilzerian was found liable for securities fraud.  See SEC v. Bilzerian, 29 F.3d at 691.  Defendant P. Bilzerian was further ordered to disgorge his illegal profits of over $33 million and over $29 million in prejudgment interest (collectively with the accrued interest, the "SEC Disgorgement Order"), both of which were affirmed by the D.C. Circuit.  Id.  In so ruling, the D.C. Circuit found that "others were injured by Bilzerian's deceptions," including investors who paid an inflated price for his stocks "because of his illegal actions."  Id. at 697. The D.C. Circuit also rejected defendant P. Bilzerian's Double Jeopardy claim, finding that "the disgorgement order is remedial in nature and does not constitute punishment within the meaning of double jeopardy."  Id. at 696.

#### 3.   Defendant P. Bilzerian's Many Bankruptcy Proceedings

In 1991, defendant P. Bilzerian filed for bankruptcy in Florida. After seven years of protracted litigation, during which defendant P. Bilzerian attempted to evade the SEC Disgorgement Order, the Eleventh Circuit held that the SEC Disgorgement Order was not dischargeable in

bankruptcy.  See In re Bilzerian, 153 F.3d at 1282.  In doing so, the Eleventh Circuit rejected the same arguments regarding an alleged lack of victims and Double Jeopardy Clause claim that were previously rejected by the D.C. Circuit.  Id. at 1282-83.

In 2001, defendant P. Bilzerian filed for bankruptcy again in Florida, and his bankruptcy petition was dismissed again.  See In re Bilzerian, 276 B.R. 285, 289 (M.D. Fla. 2002), aff'd sub nom. Bilzerian v. SEC, 82 F. App'x 213 (11th Cir. 2003).  In affirming the bankruptcy court's dismissal of defendant P. Bilzerian's second bankruptcy petition, the district court found that "[P.] Bilzerian has been the beneficial owner of substantial assets in the years since the judgment was entered, but he has made no attempt whatsoever to pay the SEC Judgment.  Instead of complying, he has transferred the assets" to ". . . off-shore trusts and family-owned companies and partnerships.  It is clear that he did this purposefully to insulate his assets from the reach of his creditors."  In re Bilzerian, 276 B.R. at 289-90.  The district court determined that defendant P. Bilzerian transferred at least $31 million through an offshore family trust and shell companies to evade his creditors.  Id.

4.    Defendant P. Bilzerian's Many Contempt Orders

After years of refusing to pay the SEC Disgorgement Order, defendant P. Bilzerian was found in contempt.  See SEC v. Bilzerian, 112 F. Supp. 2d 12, 28 (D.D.C. 2000), aff'd, 75 F. App'x 3 (D.C. Cir. 2003).  The district court found that he had the means to repay the SEC Disgorgement Order, at least in part, but that he was focused on "how to avoid compliance with the Court's order."  Id.  Defendant P. Bilzerian was ultimately ordered incarcerated until he complied with the district court's accounting orders.  See SEC v. Bilzerian, 131 F.

4

Supp. 2d 10, 18 (D.D.C. 2001), aff'd, 75 F. App'x 3 (D.C. Cir. 2003). Following his incarceration, the SEC reached a settlement with defendant P. Bilzerian's wife to turn over some of the assets from defendant P. Bilzerian's offshore entities.

The district court also appointed a receiver to effectuate the SEC Disgorgement Order. See SEC v. Bilzerian, 613 F. Supp. 2d 66, 69 (D.D.C.), decision clarified on reconsideration, 641 F. Supp. 2d 16 (D.D.C. 2009), and aff'd, 410 F. App'x 346 (D.C. Cir. 2010). The district court found that defendant P. Bilzerian "evaded enforcement of the judgments and continued filing frivolous lawsuits in an effort to undermine the judgments" and found defendant P. Bilzerian in contempt again. Id. Due to his constant filing of "frivolous lawsuits," the district court also barred defendant P. Bilzerian from "commencing any proceeding in any court" without prior approval from the district judge, which was later affirmed by the D.C. Circuit. Id.; SEC v. Bilzerian, 75 F. App'x 3, 4 (D.C. Cir. 2003).

During the receivership, the district court found that defendant P. Bilzerian repeatedly refused to make required financial disclosures to the receiver. See SEC v. Bilzerian, CV 89-1854-RCL, ECF Nos. 1091, 1142. In 2016, the district court granted the receiver's request to terminate the receivership, though it explicitly held that the "disgorgement judgments against [Paul] Bilzerian in this case shall remain in full force and effect." SEC v. Bilzerian, CV 89-1854-RCL, ECF No. 1201. Although the receivership was terminated, the SEC continues to pursue the SEC Judgment in the District of Columbia. As the D.C. district court in the underlying SEC case found as late as 2018, defendant P. Bilzerian "has never fully satisfied the money judgment that was entered

5

against him" and the "receivership was just one of many efforts made" by the SEC to "seek payment of the outstanding judgment." <u>SEC v. Bilzerian</u>, CV 89-1854-RCL, ECF No. 1219.

Although the case was opened in 1989, over 35 years ago, it remains active because defendant P. Bilzerian continues to disregard the district court's orders.[2]  In 2009, the district court found "clear and convincing evidence of Bilzerian's contempt" of its order by filing lawsuits in his own name and directing lawsuits through third-parties.  <u>SEC v. Bilzerian</u>, 613 F. Supp. 2d at 70.  In 2010, the district court again found defendant P. Bilzerian in contempt for violating the court's orders.  <u>See</u> <u>SEC v. Bilzerian</u>, CV 89-1854-RCL, ECF No. 1091.  The D.C. district judge has also made multiple factual findings over the years that defendant P. Bilzerian continually attempts to "mislead the Court about the status of his finances," "engage[s] in a pattern of deception and financial maneuverings in order to shield his assets from legitimate creditors and from the accounting that the Court had undertaken," and that defendant continues to have "considerable wealth." <u>SEC v. Bilzerian</u>, CV 89-1854-RCL, ECF Nos. 1232, 651.

---

[2] Defendant P. Bilzerian's motion practice has also targeted the Honorable Royce Lamberth, who is assigned to the SEC matter in the District of Columbia.  These filings including a recusal motion predicated on a third-party reporting to Judge Lamberth that "Bilzerian told me that if Bilzerian outlives his wife, Bilzerian intends to go to Washington, murder Judge Lamberth, seek a jury trial, admit the intentional killing, but seek an acquittal on the basis of justifiable homicide.  Bilzerian believes that an all-black Washington, D.C. jury will acquit Bilzerian when Bilzerian tells his sob story of what the government and this Court supposedly did to Bilzerian and his family." <u>SEC v. Bilzerian</u>, CV 89-1854-RCL, ECF No. 1118, at 2-3.  Judge Lamberth ultimately denied the recusal motion. <u>Id.</u>

1    Defendant P. Bilzerian continues to be found in contempt of the

2    district court's orders to this day.  Just two months ago, in January

3    2025, the district court again found defendant P. Bilzerian in

4    contempt because he filed a lawsuit in the Eastern Caribbean Supreme

5    Court, including through International Investments Ltd. -- one of the

6    companies the indictment alleges he controlled and used to funnel

7    millions of dollars into defendant Ignite.  See SEC v. Bilzerian, CV

8    89-1854-RCL, ECF No. 1259.

9    With interest, the SEC Disgorgement Order now exceeds $180

10    million.

11    **B.    Defendants' Charged Fraudulent Schemes**

12    Relevant to the Motion, and as alleged in the Indictment,

13    defendants Ignite, Rohleder, and P. Bilzerian conspired for several

14    years to conceal defendant P. Bilzerian's control over defendant

15    Ignite and the millions of dollars defendant P. Bilzerian funneled

16    through various companies to capitalize defendant Ignite to dodge the

17    SEC Disgorgement Order.  In addition, defendants Ignite, Rohleder,

18    and P. Bilzerian conspired to mislead investors with respect to

19    defendant Ignite's vape product sales.  The defendants did this by

20    falsely representing the date of a sale of vape products to defendant

21    P. Bilzerian's company International Investments, failing to disclose

22    the fact that International Investments was also controlled by

23    defendant P. Bilzerian, and failing to disclose that the company

24    could only offload the vape products by competing with defendant

25    Ignite.

26    Trial is set for May 19, 2025.

27

28

7

1   **III. LEGAL STANDARD**

2        When evaluating defendants' motion to dismiss for failure to

3   state an offense under Rule 12(b), "the district court is bound by

4   the four corners of the indictment" and "must accept the truth of the

5   allegations in the indictment in analyzing whether a cognizable

6   offense has been charged." United States v. Boren, 278 F.3d 911, 914

7   (9th Cir. 2002) (cleaned up). "The indictment either states an

8   offense or it doesn't. There is no reason to conduct an evidentiary

9   hearing." Id. "An indictment is sufficient if it contains the

10  elements of the charged crime in adequate detail to inform the

11  defendant of the charge and to enable him to plead double jeopardy."

12  Buckley, 689 F.2d at 896. The question is whether the "indictment

13  adequately alleges the elements of the offense and fairly informs the

14  defendant of the charge, not whether the Government can prove its

15  case." Id. at 897. "[A]n indictment should be: (1) read as a whole;

16  (2) read to include facts which are necessarily implied; and (3)

17  construed according to common sense." Id. at 899. The Ninth Circuit

18  has repeatedly recognized that an "indictment that sets forth the

19  charged offense in the words of the statute itself is generally

20  sufficient." Ely, 142 F.3d at 1120 (citation omitted). In

21  responding to a motion to dismiss, "the government [is] not required

22  to allege its theory of the case or list supporting evidence to prove

23  the crime alleged." United States v. Musacchio, 968 F.2d 782, 787

24  (9th Cir. 1992). There is no summary judgment procedure in criminal

25  cases, nor do the rules provide for such pre-trial evaluation of

26  competing evidence from the parties by the Court, as opposed to a

27  jury. See United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996)

28  (reversing a district court's dismissal of an indictment under Rule

12(b), holding that "[t]he district court thus erred in considering
the documentation provided by the defendants.  By basing its decision
on evidence that should only have been presented at trial, the
district court in effect granted summary judgment for the defendants.
This it may not do.").

**IV.  ARGUMENT**

> **A.    The Court Should Reject Defendants' Improper Collateral
> Attack on the SEC Disgorgement Order**

Count one alleges that defendants "conspired with one another"
to "defraud the United States."  Dkt. 1 at 4.  Because the indictment
tracks the language of the statute, count one is sufficient under
controlling Ninth Circuit law.  <u>Ely</u>, 142 F.3d at 1120.  In the
Motion, defendants improperly attempt to collaterally attack the SEC
Disgorgement Order by recycling the same legal challenges that
defendant P. Bilzerian has unsuccessfully made to other courts,
misrepresenting case law regarding SEC disgorgement orders, and
ignoring the fraudulent scheme alleged by the Indictment.  The Court
should reject their arguments.

> 1.    <u>Defendants Cannot Collaterally Attack the SEC
> Disgorgement Order in This Proceeding</u>

The bulk of defendants' arguments for dismissing count one
amount to nothing more than an improper collateral attack on the SEC
Disgorgement Order.  Such an argument is not cognizable in a motion
to dismiss or, for that matter, at any stage of the criminal case.  A
criminal statute must provide express authorization for a defendant
to collaterally attack a predicate judgment that forms the basis of a
criminal charge.  <u>See</u> <u>Custis</u>, 511 U.S. at 494 (1994).  And some
criminal statutes do.  Section 1326(d) authorizes collateral attacks

9

on the validity of underlying deportation orders, and 21 U.S.C. § 851(c) provides a vehicle for assailing prior convictions.  Section 371 does not.

Over and over again, courts have rejected attempts to collaterally attack prior judgments without express statutory authorization.  See Custis, 511 U.S. at 492 ("Absent specific statutory authorization, Custis contends that an implied right to challenge the constitutionality of prior convictions exists under § 924(e).  Again we disagree."); Lewis v. United States, 445 U.S. 55, 60 (1980) ("[T]he firearms prosecution does not open the predicate conviction to a new form of collateral attack" because "nothing thing on the face of the statute suggests a congressional intent to limit its coverage to persons whose convictions are not subject to collateral attack." (cleaned up)); United States v. Sadler, 77 F.4th 1237, 1243 (9th Cir. 2023) (holding that the language of § 922(g) "provided no basis for concluding that a prior conviction is subject to collateral attack for potential constitutional errors before it may be counted" (cleaned up)); United States v. Delgado, 592 F. App'x 602, 603 (9th Cir. 2015) ("SORNA does not authorize such a collateral attack [on the defendant's underlying state sex offense conviction]" because "SORNA does not contain similar language" to § 1326(d)); United States v. M.C.E., 232 F.3d 1252, 1257 (9th Cir. 2000) ("[I]f Congress had intended to allow collateral attacks during § 5032 transfer hearings, it could have so stated in the statute itself—but declined."); United States v. Price, 51 F.3d 175, 177 (9th Cir. 1995), as amended (Apr. 21, 1995) ("The legislation authorizing the Guidelines . . . does not expressly or impliedly provide defendants with an opportunity to challenge the validity of prior convictions

10

before the sentencing court may count them for career offender

calculations.").

That is not to say defendants are left without a remedy.

Defendant P. Bilzerian has fully availed himself of the opportunity

to challenge the SEC Disgorgement Order.  SEC v. Bilzerian, CV 89-

1854-RCL; see Lewis, 445 U.S. at 60.  Allowing his codefendants to

relitigate issues fully resolved in two other circuits would

frustrate the judicial system's interests in "[e]ase of

administration" and "promoting the finality of judgments." Custis,

511 U.S. at 492.  By the defendants' logic, they could just as easily

use this criminal case to challenge the SEC as a violation of the

nondelegation doctrine.  Simply put, this is not the right forum.

### 2.    Defendants' "Proof of Harm" Argument Is Incorrect

In any event, the defendants' legal challenges to the SEC

Disgorgement Order fail for the same reasons previously articulated

by prior federal courts.

To start, defendants allege that the SEC Disgorgement Order is

not predicated on any "proof of harm."  (Mot. at 4.)  This is

incorrect.  As the D.C. Circuit already explained in dismissing an

identical argument made by defendant P. Bilzerian in the appeal of

the SEC Disgorgement Order, "others were injured by Bilzerian's

deceptions -- investors paid Bilzerian an inflated price for his

stocks because of his illegal actions." SEC v. Bilzerian, 29 F.3d at

697.[3]  Moreover, "[i]f Bilzerian had disclosed the truth about his

---

[3] Following Liu, multiple district courts have allowed
disgorgement awards to be directed toward the Treasury even when the
judgment did not identify any specific victims.  See SEC v. Bronson,
602 F. Supp. 3d 599, 617-18 (S.D.N.Y. Apr. 29, 2022); SEC v. Laura,
2020 WL 8772252, at *5 (E.D.N.Y. Dec. 30, 2020) (Liu "does not
*(footnote cont'd on next page)*

1  stock purchases and source of funding, the market would have

2  discounted his ability to take over the target corporations.  By

3  failing to make these disclosures, Bilzerian created the impression

4  that hostile takeovers were imminent, thereby driving up the price of

5  the target corporations' securities."  Id. at 696–97.

6          3.   Other Circuit Courts Have Rejected Defendants' Double
                Jeopardy Argument Against the SEC Disgorgement Order
7

8       Defendants also argue that the SEC Disgorgement Order

9  constitutes "punishment" and, therefore, is barred by the Double

10 Jeopardy Clause.  This is again wrong.

11      In evaluating the exact same facts, the D.C. Circuit held that

12 defendant P. Bilzerian's "disgorgement order is remedial in nature

13 and does not constitute punishment within the meaning of double

14 jeopardy . . . The district court ordered Bilzerian to give up only

15 his ill-gotten gains; it did not subject him to an additional

16 penalty."  SEC v. Bilzerian, 29 F.3d at 696.  Four years later, the

17 Eleventh Circuit held the same: "A civil remedy following criminal

18 conviction only constitutes 'punishment' for purposes of the Double

19 Jeopardy Clause when it is so severe or so unrelated to remedial

20 goals that it amounts to a second criminal punishment.  While the

21 fraud exception to discharge does have a deterrent goal, it is

22 clearly not 'punitive,' because Bilzerian's disgorgement was

23 explicitly limited to profits resulting from illegal conduct."  In re

24 Bilzerian, 153 F.3d at 1283.

25      Defendants' other miscellaneous arguments concerning the SEC

26 Disgorgement Order also fail.  First, Hudson v. United States, 522

27

28 require that a disgorgement award reflect every individually wronged
   investor's private agreements").

                                    12

U.S. 93 (1997), does not establish that the SEC Disgorgement Order constitutes a criminal punishment in violation of the Double Jeopardy Clause; following Hudson, the Ninth Circuit has clearly held that a "SEC judgment [i]s civil in nature; disgorgement and monetary penalties are not criminal." United States v. Stockett, 270 F. App'x 600, 602 (9th Cir. 2008); see also Reiserer v. United States, 479 F.3d 1160, 1164 (9th Cir. 2007) (analyzing Hudson factors with respect to IRS statutes and concluding that there is no Double Jeopardy risk associated with tax forfeiture orders).

Next, the Supreme Court did not convert disgorgement orders into criminal penalties in Kokesh v. SEC, 581 U.S. 455 (2017). All the Supreme Court held in Kokesh is that disgorgement is a civil penalty in a civil proceeding subject to the statute of limitations "for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise." Id. at 1642 n.3. Civil penalties are not criminal penalties, and multiple circuit courts have rejected defendants' argument that Kokesh treats disgorgement orders as the latter. See, e.g., United States v. Jumper, 74 F.4th 107, 113 (3d Cir. 2023); United States v. Bank, 965 F.3d 287, 296–97 (4th Cir. 2020); United States v. Dyer, 908 F.3d 995, 1003–04 (6th Cir. 2018). This Court should do the same.

Finally, defendants' reliance on Liu v. SEC, 591 U.S. 71 (2020), is also misplaced. In Liu, the Supreme Court held that a disgorgement award should "not exceed a wrongdoer's net profits" and should be "awarded for victims." Id. at 75. Defendants argue the D.C. district court in 1993 did not reduce the disgorgement amount equal to the portion of the illegal profits defendant P. Bilzerian "returned to his investors" and, therefore, improperly exceeded his

13

net profits.  (Mot. at 6.)  Even if Liu applied retroactively, the remedy would be a reduction in the disgorgement figure -- not mischaracterizing it as a criminal penalty.  See Liu, 591 U.S. at 92; SEC v. Govil, 86 F.4th 89, 111 (2d Cir. 2023) (remanding an improper disgorgement order for "factual determination").  But it does not apply retroactively.

Only substantive rules that "narrow the scope of a criminal statute" or "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish" apply retroactively to cases that have become final.  Schriro v. Summerlin, 542 U.S. 348, 352 (2004).  In contrast, new "rules of procedure" that "regulate only the manner of determining the defendant's culpability" have no retroactive effect.  Id. at 353 (emphasis in original).  By comparison, Honeycutt v. United States, 581 U.S. 443, 445 (2017), which restricted the imposition of joint and several liability for forfeiture awards, has no retroactive effect, since "it did not alter the range of conduct punished by federal law, but decided only whether joint and several liability could be imposed as a consequence of that conduct."  United States v. Ortiz, 2018 WL 3304522, at *8 (E.D. Pa. July 5, 2018); see also United States v. Filice, No. CR 13-8-DLB-CJS-11, 2018 WL 2326616, at *2 (E.D. Ky. May 22, 2018).  The same logic governs Liu and its retroactive application to defendant P. Bilzerian's SEC Disgorgement Order here.

**B.    Count One Alleges a Scheme of Affirmative Concealment**

Defendants also argue that count one must be dismissed because it fails to allege any duty to disclose information about defendant P. Bilzerian's involvement with defendant Ignite.  (Mot. at 13-18.)

14

This is fundamentally a factual claim masquerading as a legal challenge and is therefore not cognizable pretrial.  But it also ignores the theory of liability count one charges: "impeding, impairing, obstructing, and defeating the lawful government functions of the SEC" through affirmative action and concealment.  (Dkt. 1 at 4, 6.)  See United States v. Barker Steel Co., 985 F.2d 1123, 1131-32 (1st Cir. 1993) (reversing a district court's dismissal of a § 371 indictment, holding that "omission can only constitute a crime if the accused had a duty to act.  In this case, however, the defendants are charged with defrauding the government by their actions, not by failure to act"); United States v. Kanchanalak, 41 F. Supp. 2d 1, 10 (D.D.C. 1999) (rejecting defendants' arguments that "they had no obligation to report their identity to the FEC or to reveal their identity to the political committees" for liability under § 371 because the indictment "does not charge the defendants with conspiracy to fail to reveal their names" but with "a conspiratorial agreement to use deceptive or deceitful means to prevent the FEC from performing its lawful reporting function"), rev'd on other grounds, 192 F.3d 1037 (D.C. Cir. 1999); United States v. Yang, 2024 WL 3904063, at *7 (D. N. Mar. I. Aug. 23, 2024) (denying a motion to dismiss a § 371 charge for conspiring to "obstruct the government's legitimate function of detecting and removing aliens unlawfully present in the United States" by travelling by sea and using unmonitored ports to avoid government detection).[4]

---

[4] Accordingly, defendants' citation to United States v. Murphy, 809 F.2d 1427 (9th Cir. 1987), and United States v. Varbel, 780 F.2d 758 (9th Cir. 1986), are unavailing because both those cases involved allegations of failure to disclose.  Months after Varbel was published, Congress effectively overrode it by statute.  See Anti-

(footnote cont'd on next page)

Defendants' reliance on <u>United States v. Concord Management & Consulting LLC</u>, 347 F. Supp. 3d 38 (D.D.C. 2018), demonstrates they are aware of the distinction.  They quote <u>Concord Management</u> for the proposition that "[a] failure to disclose information can only be deceptive -- and thus serve as the basis for a § 371 violation -- if there is a legal duty to disclose the information in the first place."  <u>Id.</u> at 48.  Yet they omit the district court's further holding that "not <u>all</u> conspiracies to defraud the United States by impairing the lawful functions of the FEC and DOJ must allege a legal duty to report or register."  <u>Id.</u> at 51 (emphasis in original).  In other words, failure to disclose information is only one of many ways, including affirmative concealment, that an indictment can properly allege a § 371 violation.

Accordingly, count one sufficiently alleges a scheme to defraud the government through affirmative concealment.

**C.    The Court Should Reject Defendants' Improper Factual Challenges to Count One**

Defendants further complain that they disagree with count one's factual allegations, including that they believe the SEC no longer has authority to collect the SEC Disgorgement Order and that they did not intend to obstruct the SEC's collection of the SEC Disgorgement Order.  (Mot. at 13-18.)  Again, these factual disputes are irrelevant at this stage, since the Court "shall presume that the allegations of the indictment are true" in evaluating a motion to dismiss.  <u>Buckley</u>, 689 F.2d at 897.  Count one clearly and sufficiently alleges that the defendants "knowingly and willfully

Drug Abuse Act of 1986, Pub. L. No. 99-570, Title I, § 1354(a), 100 Stat. 3207-22 (Oct. 27, 1986).

conspired with one another" to "to defraud the United States and

agencies thereof, namely, the SEC, by impeding, impairing,

obstructing, and defeating the lawful government functions of the SEC

with respect to collection of the SEC Judgment by deceitful and

dishonest means." (Dkt. 1 at 4). This is sufficient to defeat

defendant's motion to dismiss under Rule 12(b). <u>Buckley</u>, 689 F.2d at

896. Defendants will have every opportunity to challenge the

government's evidence at trial.[5]

### D. The Court Should Reject Defendants' Improper Factual Challenges to Counts Two Through Six in a Motion To Dismiss

For the same reason, the Court should dismiss defendants' many

factual disputes relating to counts two through six. In evaluating a

motion to dismiss under Rule 12(b), the Court "shall presume that the

allegations of the indictment are true," <u>Buckley</u>, 689 F.2d at 897,

and it should reject defendant's improper attempt to take the fact-

finding duty away from the jury. <u>Jensen</u>, 93 F.3d at 669 ("[N]or do

the rules provide for such pre-trial evaluation of competing evidence

from the parties by the Court, as opposed to a jury.").

---

[5] Although "the government [is] not required to allege its theory of the case or list supporting evidence to prove the crime alleged" in response to a motion to dismiss, <u>Musacchio</u>, 968 F.2d at 787, defendants are also incorrect that all "delinquent non-tax debts must be turned over to Treasury for appropriate action to collect the debt." (Mot. at 15.) 31 C.F.R. § 901.1, which implements 31 U.S.C. 3711(g), specifies that the transfer of debt to the Treasury for collection "does not apply" to debts in litigation. Indeed, the SEC continues its attempts to collect the SEC Disgorgement Order. Although defendants allege that the SEC "ceased its apparent efforts to collect" the SEC Disgorgement Order in 2016, they note earlier in the same Motion that an SEC litigator was in negotiations with defendant P. Bilzerian three years later, in 2019. <u>Compare</u> Mot. at 3 (referring to a July 15, 2019 email between an SEC litigator and P. Bilzerian) <u>with</u> (claiming that "the SEC ceased its apparent efforts to collect on Bilzerian's disgorgement judgment" in 2016). The SEC issued subpoenas in furtherance of collecting the SEC Disgorgement Order following the receiver's termination in 2016.

In their efforts to shoehorn their factual challenge into a legal argument, defendants claim that the government has "has failed to provide Brady material relating to Company 1's misrepresentations."  In essence, defendants' Brady argument is a claim that the evidence at trial will not prove their guilt, and to the extent the government persists in this prosecution, that is ipso facto evidence that it has hidden exculpatory evidence.  Indulging this argument would empower any criminal defendant to allege a Brady violation merely by declaring his innocence, and the Motion is not an appropriate vehicle for raising discovery disputes.

The allegation is also baseless.  Defendants have neither met and conferred with the government about this issue before lodging the discovery claim in the middle of their Rule 12(b) motion, nor did they "state with particularity" the basis for the dispute as required by the Court's Criminal Standing Order.  The government is aware of its discovery obligations and will abide by them.  See United States v. Elias, 2018 WL 11247848, at *1 (C.D. Cal. Jan. 12, 2018) (denying a defendant's request for a subpoena because "defendant has not provided evidence that the government has not acted in good faith in its representations to the Court"); United States v. Garcia, 2015 WL 13660438, at *4 (C.D. Cal. Apr. 28, 2015) (denying motion for discovery because defendant "made no showing that such an order is necessary, i.e., that the Government has not already complied with its discovery obligations."); United States v. PG&E Co., 2015 WL 3958111, at *14 (N.D. Cal. June 29, 2015) ("[T]he Court presumes that the Government will comply with its Brady obligations and obey the law, absent evidence to the contrary.").

## V.    CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny the Motion in its entirety.