PAUL A. BILZERIAN, *Pro* Se
P.O. Box 2086
Basseterre, St. Kitts
The Residences
Frigate Bay, St. Kitts
Tel: (869) 466-8000
Email: pabilzeria@aol.com

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br>v.<br>PAUL A. BILZERIAN, SCOTT ROHLEDER and IGNITE INTERNATIONAL BRANDS, LTD.<br>Defendants. | Case No. 2:24-cr-00569-MCS-1<br>Hon. Marc C. Scarsi<br>**PAUL A. BILZERIAN'S *PRO SE* MEMORANDUM OF LAW IN REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS** |

On November 11, 2025, Defendant Paul A. Bilzerian filed a *pro se* Motion to Dismiss on Speedy Trial Grounds (Dkt. 148). Notwithstanding the requirement in § VI. C. of the then presiding judge's Standing Order requiring any opposition to a motion to be filed within 14 days, the government filed no response to the motion and has never explained its failure to respond. On June 25, 2026, following Bilzerian's filing of a Mandamus Petition, this Court ordered the government to respond to the outstanding speedy trial motion (Dkt. 179). On July 17, 2026, the

government filed its Opposition to the Motion to Dismiss (Dkt. 180).[1] Bilzerian now timely files his Reply.

**Introduction**

Insofar as the government's Opposition purports to present the Court with the relevant facts, it is a combination of sophistry, material omissions, and misrepresentations (Dkt. 180 at 1-6). The very idea that the government "diligently" pursued Bilzerian's attendance or in any way sought to facilitate it could not be any further from the truth and is indisputably belied by the actual record in the case. The government wholly defaulted on its obligations. In reply to this attempt at re-writing the factual history, Bilzerian will provide the Court with the chronology of events below.

To the extent the government offers legal argument in support of its Opposition, (Dkt. 180 at 9-19), it again presents false facts and mischaracterizations of its conduct and omits significant authority right on point that contradicts its arguments. Its legal arguments will be addressed below as well. It is respectfully submitted that there is not another reported case in which a defendant in a criminal case took so many affirmative steps to try to appear when otherwise unable to appear on his own, notwithstanding the government's obligation to bring him before the

---

[1] Notwithstanding this Court's Rule in § F. of the Standing Order in Criminal cases, limiting motions and oppositions to 10 pages (Bilzerian's Motion to Dismiss was only 9 pages (Dkt. 148) the government's Opposition is 19 pages, plus a 6-page affidavit with exhibits and tables, totaling 102 pages. The government also addresses events that post-date Bilzerian's motion. As a result, Bilzerian respectfully asks the Court's indulgence in exceeding the page limit for his reply.

Court. As will be described below, in cases in which the government's failures to meet its obligation in that regard were far less than in the instant case, courts have dismissed the case with prejudice for the clear violation of the defendant's fundamental constitutional and statutory right to a speedy trial.

**Relevant Background**

Defendant Paul A. Bilzerian is a 76 year old citizen of St. Kitts who has lived there continuously since 2011. On September 26, 2024, a multi-count indictment, alleging conspiracy, securities fraud, and wire fraud was returned in this Court against Bilzerian and his co-defendants, Scott Rohleder and Ignite International Brands, Ltd. ("Ignite") (ECF #1). Bilzerian has at all times proceeded *pro se* in the district court and has maintained his absolute innocence.

Bilzerian was never served with a copy of the indictment, was never brought before the district court for an initial appearance, and has never been provided with any of the approximately 9 TB of discovery the government provided to each of the other defendants over a year ago or any subsequent discovery, notwithstanding his repeated, consistent, and unequivocal notices to the government and the court that he wanted to physically appear to defend himself and requested assistance to do so.[2]

[2] On September 27, 2024, in coordination with the prosecuting authorities in the instant case, a parallel civil case was filed against the same defendants and others by the Securities and Exchange Commission ("SEC") in the Southern District of New York (Case No. 1:24-cv-07331-VM-OTW hereinafter referred to as the "SEC Case"). In sharp contrast with this criminal case, the SEC promptly served the civil complaint on Bilzerian in St. Kitts and he has participated as a *pro se* litigant in that action at all times until March 24, 2026, when the prosecutor in the instant case had him arrested in St. Kitts, following his refusal to agree to the prosecutor's request to intervene in the civil case and to have the civil case stayed. The prosecutor had Bilzerian arrested at the very

(continued…)

Each of the other defendants was timely brought before the court and was arraigned and expressly advised of the right to a speedy trial, and on October 28, 2024, a trial was initially scheduled for December 23, 2024 (ECF ##17, 18, 19, 20, 32, 34).

On November 22, 2024, the court continued the trial date from December 23, 2024, to May 19, 2025 (ECF ##36; 37)[3] on the Joint Stipulation that included two of the parties but did not include Bilzerian (ECF #27).[4] At no time has Bilzerian ever been consulted regarding any stipulation for a continuance, nor has the court given him any notice before or after granting any continuance.

On January 19, 2025, Bilzerian applied for a visa to enter the United States so he could appear before the district court, be arraigned and stand trial. [Bilzerian Declaration, Exhibit 1, Visa Application and Confirmation]. Thereafter, in March 2025, Bilzerian asked the prosecutors to assist in getting his visa application approved, but the prosecutors refused. Bilzerian also sought to discuss the

---

time Bilzerian reiterated his desire to appear before the California court and was trying to work out arrangements. He was held incommunicado to all but St. Kitts counsel, with no access to a phone or computer or his files from March 24, 2026 until May 28, 2026.

[3] The court's Order continuing the trial date refers to "the parties;" and the docket sheet concerning the Order and the related transcript refers to Bilzerian (ECF ## 37, 38); however, it is undisputed that Bilzerian never consented to any continuance. The continuance of 147 days was granted without an inquiry to or consultation with Bilzerian.

[4] The docket sheet indicates that the Joint Stipulation to continue the trial included Bilzerian along with the other defendants, which is clearly inaccurate. Indeed, the Joint Stipulation expressly notes that it is solely between the government and the other two defendants and that Bilzerian has not yet appeared. It also represents that an arrest warrant had been issued for Bilzerian. However, no indictment or arrest warrant was ever served on Bilzerian, nor was any attempt made. Finally, the Joint Stipulation acknowledges that under the Speedy Trial Act, trial had to commence by January 6, 2025, absent a specified Speedy Trial Act exclusion under 18 U.S.C. §3161 (ECF #27 at 2). There has never been any exclusion from the Speedy Trial Act's provisions sought by or granted to Bilzerian.

conditions of his release within the district while preparing for trial, but the prosecutors refused to agree to any bail conditions.

On April 7, 2025, the government and Defendants Rohleder and Ignite filed a second Stipulation to Continue the Trial date, this time from May 19, 2025, to November 3, 2025 (ECF #98). Once again, the Stipulation to Continue the Trial represented to the court that an arrest warrant had been issued for Bilzerian (ECF #98 at 2); yet no attempt was ever made to serve Bilzerian with the indictment or an arrest warrant, notwithstanding the fact that the prosecutors have known at all times where Bilzerian has been located since the indictment. Once again, the court was reminded that Bilzerian had not yet appeared, but that all defendants were to be tried together (*Id*.).

On April 15, 2025, the court entered an Order, again continuing the trial date from May 19, 2025, to November 3, 2025 (170 days) and expressly excluded the interim period as to Defendants Rohleder and Ignite, without any mention of Bilzerian, his status, the provision of discovery to him, or his speedy trial rights (ECF #108).

On August 29, 2025, a third Stipulation to Continue Trial entered into between the government and Defendants Rohleder and Ignite was filed asking to move the trial date from November 3, 3025 to January 12, 2026 (ECF #120). Once again, the government represented to the court that an arrest warrant had been issued for Bilzerian, that he had not yet appeared and that all defendants were to be joined for

trial (*Id*. at 2). Once again, no attempt was ever made to serve Bilzerian with the indictment or an arrest warrant. As before, the government knew at all times that Bilzerian could not physically appear on his own despite his desire to do so, but still did not mention this to the court.

On September 5, 2025, the court ordered the trial date continued from November 3, 2025, to January 12, 2026 (70 days), expressly directing Defendant Rohleder to appear for trial (ECF #122 at 2), while making no mention of Bilzerian, his speedy trial rights, or the government's obligation to facilitate his appearance.

On September 30, 2025, a Superseding Indictment was returned against all three defendants, with no significant changes reflected in the charges against Bilzerian (ECF #123). Also on September 30, 2025, the government filed its Notice of Request for Detention of Bilzerian, claiming that he posed a flight risk and a safety risk, knowing it had absolutely no evidence whatsoever supporting either claim (ECF #129). Nowhere in its Notice did the government advise the court that the government had never served its purported arrest warrant on Bilzerian, never served him with the indictment or superseding indictment, and never undertook any effort to facilitate his presence before the court, despite knowing that Bilzerian desperately wanted to appear to defend himself against the charges, and had been trying to appear, but was physically unable to enter the country on his own without a visa.[5]

---

[5] At all times relevant to this case, there has been an extradition treaty in effect between St. Kitts/Nevis and the United States. https://www.state.gov/wp-content/uploads/2019/02/12805-Saint-Kitts-and-Nevis-Law-Enforcement-Extradition-9.18.1996.pdf. The government had every (continued…)

On October 27, 2025, arraignments were held for Defendants Rohleder and Ignite; no mention was made of Bilzerian (ECF ##136, 137, 143). Tellingly, consistent with Rule 10(c) of the Federal Rules of Criminal Procedure, the arraignments were handled remotely by video. That certainly could have been done for Bilzerian if the government had any intention of complying with his statutory or constitutional speedy trial rights.[6]

On October 29, 2025, Bilzerian filed a Notice of Appearance and Demand for a Speedy Trial. [ECF #141]. On November 11, 2025, Bilzerian filed a Motion to Dismiss the Indictment for violation of his right to a speedy trial. [ECF #148]. The government did not file an opposition to his motion for eight months and only did so after this Court ordered the government to file any opposition not later than July 17, 2026. [ECF #179].

opportunity to initiate extradition proceedings to procure Bilzerian's attendance but chose not to until over 18 months after indicting him and only then did so in an effort to punish Bilzerian because he dared to oppose AUSA Pang's motion to intervene and stay the parallel civil case. Tellingly, and in an outrageous display of bad faith, the prosecutors in this case initiated extradition proceedings and had Bilzerian arrested in St. Kitts on March 24, 2026, over 18 months after the indictment, and even though he expressly reaffirmed his desire to enter the country and was in the middle of discussing with government counsel the logistics of his travel, the government advised St. Kitts that Bilzerian was a flight risk to prevent him from being released on bail. Government counsel's (AUSA Lachman) assurance to Bilzerian as to how easy it is for the government to facilitate such a defendant's appearance makes its prior inaction that much more indefensible.

[6] To the extent the government attempts to excuse the overwhelming violation of Bilzerian's statutory speedy trial rights by pointing to the provision indicating that the statutory clock only starts with the first appearance (Dkt. 180 at 1), in such a situation where a defendant is entirely unable to physically appear for reasons outside his control (and within the government's control), there is no reason this procedure was not invoked for Bilzerian. He made clear at all times that he wanted to appear to defend himself, so he certainly would have consented to a video arraignment. The government simply chose not to ask because it knew the answer and had no intention of honoring his speedy trial rights.

A trial date was set for January 12, 2026 (*Id.*). Once again, Defendants Rohleder and Ignite were advised of their statutory and constitutional rights, including the right to a speedy trial (ECF ## 138 139) and still no step was taken to bring Bilzerian before the court or to facilitate his efforts to appear, and, of course, no effort was made to advise him of his statutory and constitutional rights, despite the government knowing exactly where he was located at all times and notwithstanding government counsel's direct communications with him (See e.g. ECF #147-4 – email exchange between AUSA Pang regarding the pending criminal case and eliciting Bilzerian's consent to a stay in the parallel civil case).

**Co-Defendants Brought the Need for Bilzerian to Appear and Testify to the Court's Attention.**

With the trial date approaching and the government refusing to do anything to help Bilzerian appear before the court or facilitate his entry into the country, on October 29, 2025, Defendants Rohleder and Ignite filed a motion for permission to take Bilzerian's testimony at trial by Livestream Two-way video (ECF #135).

In that motion, Bilzerian's co-defendants reminded the court that as of that filing, more than a year since the indictment, Bilzerian inexplicably still had not been served with the indictment, that the government refused to cooperate with Bilzerian's efforts to voluntarily return to the United States, that the government never initiated extradition proceedings, and that he had not been provided with any of the 9 TB of discovery with the trial less than three months away.

The court was further reminded that, having learned of the indictment, counsel retained by Ignite had reached out to the government to advise the prosecution that Bilzerian wanted to appear before the court, but could not enter the United States without a visa or the government's help and that Bilzerian, on his own initiative over nine months earlier, had applied for a visa to be able to enter the United States to appear for his trial, but his visa application had gone unanswered. The court expressly was told that as a foreign citizen unable to enter the country on his own, it appeared that Bilzerian would not be at the trial and his testimony was essential for the defense (ECF #135 at 3). [7] The court was advised of Bilzerian's desire to enter

---

[7] In advance of filing the motion (ECF #135), defense counsel contacted government counsel to ascertain the government's position on this motion. Government counsel advised that the government opposed the motion but that if Bilzerian were "willing to make himself available for trial, the government (sic) is happy to facilitate his transportation to the United States for his personal appearance at trial." (Email from AUSA Pang to defense counsel October 29, 2025, 11:25 a.m. Pacific). In truth, the government has been told since the inception of the case that Bilzerian wanted to appear before the court, but could not because a visa was required to enter the country. The government did absolutely nothing to "facilitate" his ability to enter the country to appear in the case.

Earlier in the case, defense counsel asked AUSA Pang whether the government was ever planning to serve Bilzerian with a copy of the indictment and whether he would be at the trial. AUSA Pang advised that the government was "looking for him" and that "if he is at trial, he will be at trial." The representation that the government was "looking for" Bilzerian or in any way did not know where or how to find him to facilitate his entry into the country was clearly false. First, Bilzerian has lived in the same place on the small island of St. Kitts for fifteen years. Secondly, when the SEC filed a parallel civil case against the defendants in this case in coordination with the prosecutors in this case, contemporaneously with the filing of the indictment in this case in September 2024, the SEC had no problem promptly personally serving Bilzerian with the Complaint and Summons in St. Kitts.

Perhaps most demonstrative of the falsity of AUSA Pang's representation is that the discovery provided by Pang to the defendants in the criminal case other than Bilzerian includes an FBI 302 report of investigation from July 1, 2025, describing surveillance of Bilzerian which shows the government knew exactly where Bilzerian was (ECF #150 at 2-3, n. 1). Additionally, AUSA Pang was in contact with Bilzerian by email and never once asked him where he was nor offered any help whatsoever to facilitate his entry into the United States to appear in the case. (See e.g. ECF #147-4).

the country and appear in this case to defend against the charges and to provide exculpatory testimony in person for his co-defendants.

**The Government Misled the Court and Refused to Help Bilzerian Appear.**

On November 12, 2025, the government filed its opposition to the motion for Bilzerian's Livestream testimony (ECF #145). The entire thrust of the government's opposition was that the motion should be denied because "(Bilzerian) has thus unequivocally stated that he is in fact available and willing to appear at trial …." (ECF #145 at 1). Government counsel also reminded the court that Bilzerian "directly told the Court in his October 29, 2025 filing that he 'desire[s] to attend the trial in this case in order to represent (himself) to defend the charges against (him)." (*Id.*). Government counsel went even further and wrote:

> "During discussions about the instant Motion, on October 29, 2025, the government told counsel for ROHLEDER AND IGNITE that if BILZERIAN were willing to make himself available at trial, the government would readily facilitate his transportation to the United States so that he could personally appear at trial." (ECF #145 at 3).[8]

Finally, government counsel acknowledged to the court that Bilzerian had made clear since at least March of 2025 that he wanted to appear and defend himself at trial, but government counsel falsely claimed Bilzerian "conditioned" his appearance on getting a visa and being released without bond (ECF #145 at 4).

---

[8] The government dropped a footnote explaining that it "regularly" makes such arrangements (ECF #145 at 3, n.1).

The idea that Bilzerian ever "conditioned" his appearance on anything is clearly false. Moreover, courts have soundly dismissed this as an excuse for the government's violation of a defendant's speedy trial rights, emphasizing the government's obligation. *See e.g., U.S. v. Fernandes*, 618 F. Supp. 2d 62 (D. D.C. 2009) (dismissing on speedy trial grounds). Counsel hired by Ignite to contact the government to try to arrange for Bilzerian's appearance argued that his push to be able to come into the country to fight the charges ought to lead to his release from custody after his appearance in order to let him prepare his defense; but his appearance was never "conditioned" on anything. The lawyer hired by Ignite vigorously emphasized Bilzerian's unequivocal desire and intention to enter the country to defend himself, and he asked government counsel to help facilitate this. What he told AUSA Pang about obtaining bond, was that there should be no reason to require anything other than a release on his own recognizance and if Pang did not agree, he would take it up with the court. It is most revealing about the government's approach that, instead of beginning the process of bringing Bilzerian before the court, AUSA Pang left it with the lawyer by simply asking him to "… please keep us in the loop if and when his visa is approved." (ECF #145-4). Trying to arrange terms for release is perfectly normal and does not in any way either make the defendant somehow culpable or release the government from its constitutional obligations to bring the defendant before the court.

Perhaps more to the point, even if Bilzerian had somehow tried to make his willingness to come in "conditional" on his release on bond (he did not), there is no excuse for the government then failing to take any step ever, to open the door to facilitate Bilzerian's entry and appearance or its failure to ever initiate extradition proceedings if government counsel genuinely believed Bilzerian would not come in voluntarily. Tellingly, the government did absolutely nothing. *See United States v. McDonald,* 172 F. Supp. 2d 941 (W.D. Mich. 2001) (speedy trial rights dismissal; government conveniently overlooked the defendant's efforts to negotiate terms of a voluntary surrender).

Most significantly, when it suited the government in order to oppose the motion for Livestream testimony motion, government counsel wrote the following:

> "The government remains willing to promptly facilitate BILZERIAN'S admission into the United States, as it would with any other defendant located abroad. And now, BILZERIAN has confirmed to the Court that he is willing to, and desires to, attend trial in this case to defend himself." (ECF #145 at 4).[9]

---

[9] This theme by the government – assuring the court that now Bilzerian has made clear to the government and to the court that he wants to be permitted to appear for trial and that he fully intended to do so and that the government would facilitate it – was repeated throughout the government's submission to the district court (ECF # 145 at 6-7). Clearly, this was a sham just intended to defeat the motion for Livestream testimony. There was absolutely no obstacle stopping the government from taking the action it promised – facilitating Bilzerian's entry and appearance.

The government failed to take a single step to assist Bilzerian's entry and appearance, in knowing and intentional violation of Bilzerian's speedy trial rights. It is telling as well that government counsel never provided Bilzerian with a single document of the 9 TB of discovery in the case – all of which was delivered electronically to the other defendants (and could have been so delivered to Bilzerian). This further exposes the sham nature of the government's assurances to the court that it would facilitate Bilzerian's appearance at trial. No one genuinely would have expected Bilzerian to be able to digest and meaningfully review 9 TB of discovery in the short time then remaining before trial. Indeed, in the repeated stipulations for continuance, the government acknowledged that the volume of discovery and complexity of the case kept requiring additional months of preparation time (See e.g. ECF ##98, 120, 170).

And yet, notwithstanding this representation to the court, the Government did absolutely nothing to in any way facilitate Bilzerian's entry into the country to permit him to appear and defend himself against the charges in this case, knowingly and intentionally violating his constitutional and statutory rights to a speedy trial. Indeed, government counsel freely communicated with Bilzerian by email when government counsel so desired on its own agenda and Bilzerian responded immediately (ECF #147-4). But not once did the government ever even raise this with Bilzerian, let alone actually take any steps to "facilitate" his appearance and certainly did not do so "promptly" following its November 12, 2025, submission to the court assuring the court that it would do so.

**Co-Defendants Emphasized the Government's Default on Its Obligations.**

On November 19, 2025, Rohleder and Ignite filed their reply to the government's opposition (ECF #150). The reply focused the court again on the government's acknowledgment that Bilzerian had "unequivocally" made clear that he was available and willing to come to the trial if permitted to enter the country (ECF #150 at 1). They explained that their motion for Livestream testimony was only filed because the government had wholly defaulted on its obligations over the previous 14 months, to facilitate Bilzerian's repeatedly expressed wishes to enter the country to defend himself in this case (ECF #150 at 2). They also again reminded

the court that the government has at all times known where Bilzerian lives, had failed to serve him with any arrest warrant or the indictment, in contrast to their service of the complaint in the parallel civil case they brought and that government counsel demonstrably had not been truthful in claiming to have been "looking for" Bilzerian. They knew where he was at all times, they were in touch with him (and never mentioned refusing to help him enter the country) and they had him under surveillance, but still did nothing to bring him before the court (ECF #150 at 3).

The reply emphasized the government's wholesale default on its obligations vis a vis Bilzerian and the contrast with Bilzerian's active efforts to come before the court (ECF #150 at 4-8).

**Bilzerian Requested an Order Facilitating His Appearance.**

On October 29, 2025, Bilzerian filed his *Notice of Appearance; Demand for Speedy Trial; and Motion for an Order Directing the US Attorney to Request the State Department to Grant His Application for a Visa to Enter the United States to Attend the Trial in This Case* (ECF #141). In this pleading, Bilzerian recounted his efforts to obtain a visa and assured the court of his continuing wishes to enter the country to appear before the court to defend against the charges and he asked the court to order the government to help bring him before the court. He advised the court of his heroic service to the country in intense combat as a volunteer U.S. Army officer in the Vietnam war and his perfect record of always appearing in every court case he had, and he offered to surrender his passport immediately upon entering the

country. He even offered to have a St. Kitts government official accompany him to ensure his presence before the court if he were granted his visa. Obviously, none of this would have been necessary if there were any truth to the government's claims in their Opposition that they exercised "reasonable diligence" in bringing Bilzerian before the Court. In truth, there is not a reported case to be found in which the defendant, abroad when indicted, went to such affirmative efforts to get himself before the Court to defend the case against him, despite the government's complete default on its obligations, ranging from inaction, while falsely assuring the Court it would help, to failing to pursue extradition for 18 months, to using the extradition process as an obstacle, rending it a sham to avoid having Bilzerian at trial and to deny him his right to a speedy trial.

**After Exhausting All Efforts, Bilzerian Filed a Motion to Dismiss.**

On November 11, 2025, Bilzerian filed a *pro se* motion to dismiss the indictment on constitutional and statutory speedy trial grounds (ECF #148). In this motion, Bilzerian yet again advised the court of his efforts and desire to appear before the court and the government's failure and refusal to take any steps to meet its obligations to bring him before the court (*Id.*). He drew the court's attention to relevant authority making clear the government's obligations on which it had wholly defaulted as well as authority demonstrating that the remedy at this point had to be a dismissal of the indictment (ECF #148 at 5-7).

The government never filed a response in opposition to either of his motions and the court never ruled on either of them. The government completely ignored them and did nothing to address the underlying issue of Bilzerian's speedy trial rights. The government claims in its Opposition that it did not sit idly by, which is simply false, as the record demonstrates.

On December 4, 2025, Rohleder, Ignite, and the government entered into a stipulation to continue the trial from January 12, 2026, to October 19, 2026 (ECF #170). The government never asked Bilzerian if he would consent to the continuance, notwithstanding his outstanding demand for a speedy trial and motion to dismiss based on a denial of his speedy trial rights. Bilzerian did not join the stipulation.

On December 10, 2025, the court entered an Order continuing the trial date to October 19, 2026 (ECF #174). In granting the trial continuance, for the first time the court referred to Bilzerian and expressly acknowledged that he had filed ECF #141 – his request for an Order requiring the government to help him get before the court and to his demand for a speedy trial – and ECF #148 – his motion to dismiss based on a violation of his constitutional and speedy trial rights, clearly recognizing the filings were before the court (ECF #174 at 1-2, n.1).

The court also noted that in the future, it might have to grant the motion to dismiss or sever Bilzerian based on his motions, but appears to have mistakenly understood that it was constrained from considering his Sixth Amendment

constitutional claim and his statutory claim under 18 U.S.C. § 3161(c)(1) because Bilzerian had not yet physically appeared before the court (ECF #174 at 1-2, n.1).

**The Government Communicated with Bilzerian at Will.**

Since the initiation of this case, government counsel has communicated directly with Bilzerian at will by email on multiple occasions. This, of course, further undercuts their fabricated claims.[10]

On March 13, 2026, AUSA Pang emailed Bilzerian and the lawyers in the parallel SEC Case to ascertain their position on his attempt to intervene in and stay depositions in the civil case. Bilzerian asked for clarification and when he received it, he advised Pang that he would oppose the intervention. In his communications with Bilzerian, Pang, of course, still made no mention of facilitating Bilzerian's appearance in California to defend against the charges in the instant case.

On March 17, 2026, Bilzerian filed his formal opposition to Pang's intervention and to a stay in the SEC Case. In his filing he reiterated that he has had an unopposed motion to dismiss on speedy trial grounds pending in the related criminal case for several months, complained about the continuances that were

---

[10] Throughout their Opposition, government counsel refuse to take any responsibility for their virtually unprecedented failures to meet their obligations. One argument they make is that on a phone call with counsel for Defendant Rohleder and Ignite, AUSA Pang offered to facilitate Bilzerian's appearance and they try to support it by asserting that the attorney also represented Bilzerian and Rohleder in a separate case (ECF 180 at 6; 180-1 at 3). This is disingenuous. First, AUSA Pang and Lachman were in regular direct contact with Bilzerian at will by email, whenever they chose to contact him and Bilzerian always promptly responded. Secondly, the government filed a motion in this case alleging that a conflict arose from that attorney's representation of Bilzerian in the other case and knows that in response the attorney not only demonstrated the false assertions government counsel made in the conflict motion; but also made clear he does not in any way represent Bilzerian in this case (Dkt. 147).

granted in this case without his consent, and emphasized his desire to get all of this behind him. That submission seems finally to have made government counsel realize that they might actually be held accountable for their blatant violations of Bilzerian's constitutional and statutory speedy trial rights.

**The Government Recognized Its Problem and Caused Additional Prejudice.**

Just after Bilzerian filed his opposition to Pang's request to intervene and stay the civil case and emphasized his pending unopposed motion to dismiss the criminal case, AUSA Pang's fellow prosecutor, AUSA Lachman, emailed Bilzerian, advising that he understood that Bilzerian wanted to appear in the California case.

Of course, the entire prosecutorial team knew from the time of the indictment eighteen months earlier that Bilzerian wanted to appear. Bilzerian responded by reiterating his desire to appear and defend himself and he suggested a course of action that would allow him to go directly to Los Angeles and appear before the Court. AUSA Lachman's response was telling in one significant regard: he assured Bilzerian that the government could facilitate his entry into the United States in short order and could provide him with the necessary travel documents and without the need for a visa. This exchange took place between March 17 and March 20, 2026.

If that were the case, it is inexcusable that, despite one request after another by Bilzerian, formally and informally, in court filings and through counsel to help him come into the country to appear, not once since the indictment did the

government take this position. Instead, it did nothing and said it could do nothing to help him with the visa (rather than saying they could help get him in without a visa). In response, Bilzerian fully emphasized that it has been his wish and request since the initiation of the case to come to court to defend himself. Lachman responded by telling him they could bring him in through New York. Bilzerian replied with a series of logistical questions about how this would all take place. [Bilzerian Declaration, Exhibit 2, Lachman Emails]. Rather than responding and helping Bilzerian appear, Lachman's response was to have Bilzerian arrested in St. Kitts claiming he was a flight risk and for the first time in the 18 months since the indictment, to initiate extradition proceedings.

When a defendant is located abroad, extradition is the "hallmark of government diligence." *U.S. v. Fernandes*, 618 F. Supp. 2d 62, 69 (D.D.C. 2009). But extradition was available at all times in this case and the government decided not to pursue it, notwithstanding its clear and well-settled obligation to bring the defendant before the court. It attempts to excuse its failure to seek extradition based on its belief that it could be a "lengthy and contested process …." (Dkt. 180 at 5). That certainly is no legally cognizable excuse; moreover, the government was expressly told by a local source in 2025 that St. Kitts likely would agree to extradition (See Dkt. 150 at 3, n.1). The government entirely failed in its obligation to seek extradition and its post hoc excuses are unavailing as a matter of law. *See e.g. United States v. McDonald*, 172 F. Supp. 2d 941, 948-50 (W.D. Mich. 2001)

(government at fault for not seeking extradition); *United States v. Heshelman*, 521 Fed. Appx. 501 (6th Cir. 2013) (government cannot just take a wait and see approach).

All of the government's claims about diligently seeking Bilzerian's appearance through an INTERPOL Red Notice is just more nonsense (see *e.g.*, Dkt. 180 at 5-6). The government has known where Bilzerian has been at his home every single day since the indictment was returned. There was absolutely no need whatsoever for INTERPOL to have to take any steps to "locate" Bilzerian.

Further on this point, the government's assertions about its extradition efforts are a complete sham. It now claims to have "initiated the extradition process …" in October of 2025 (Dkt. 180 at 6-7, 12). But of course, in response to the co-defendants' litigation after that, it made no such claim and instead, assured the Court that it would facilitate Bilzerian's voluntary appearance (See Dkt. 150). It then did absolutely nothing in that regard.

Later in its Opposition, government counsel claims to have "completed" the extradition process after the email exchange in March 2026, that Bilzerian is "contesting" extradition, and further claims that the months since then should be excluded (See *e.g.* Dkt. 180 at 7, 11). This is once again based on a very troubling false narrative. As reflected in the Declaration of counsel for Bilzerian in St. Kitts, the government purported to initiate extradition proceedings in March 2026 in St. Kitts, had Bilzerian arrested (and held incommunicado for 2 months, but then told

the court in St. Kitts that the government was not prepared to proceed and asked the court to suspend the extradition proceedings indefinitely which is the present status of the extradition proceedings five months later. [Bilzerian Declaration, Exhibit 3, Bervis Affidavit].

**The Government Had Bilzerian Held Incommunicado for Two Months.**

The government ensured that Bilzerian was held incommunicado from March 26, 2026, until May 28, 2026, with no access to a phone, a computer, his wife, or anyone other than his St. Kitts lawyers. Needless to say, the Government ensured that he also continued to have no access to any of the 9TB of discovery in the case or communication with the lawyers or other parties in the criminal case. In other words, notwithstanding his outstanding motion to dismiss on speedy trial grounds and the prejudice alleged therein and that he is proceeding *pro se*, the prosecutors in the case made sure that Bilzerian had over two additional months without any ability to learn the case against him or prepare a defense or even defend himself in the parallel SEC Case. Since then, his computers, files and phone have been seized and to date, he has never been provided with any of the voluminous discovery in this case.

**The Sixth Amendment and the Speedy Trial Act Require That the Indictment Against Bilzerian Be Dismissed**

Bilzerian's Motion to Dismiss on Speedy Trial Grounds is based on the denial of his Sixth Amendment right to a speedy trial and his statutory right under 18 U.S.C. § 3161 *et seq*. (Dkt. 148 at 1). The government contends that his statutory claim

should be denied out of hand because he has not physically appeared before the Court and therefore the Speedy Trial Act clock has not started to run under 18 U.S.C. § 3161(c)(1) (Dkt. 180 at 9-10). It further asserts that Bilzerian's formal Notice of Appearance, filed on October 29, 2025 (Dkt. 141) cannot qualify as an appearance for purposes of § 3161(c)(1) because it was not a physical appearance before a judicial officer. The government cites two out of Circuit cases in support of its assertion (Dkt. 180 at 9-10).

The Ninth Circuit has indicated otherwise. In *U.S. v. Daly*, 716 F.2d 1499, 1505 (9th Cir. 1983), the court considered what constitutes an "appearance" for purposes of § 3161(c)(2) and found that a special appearance by counsel solely limited to a bail hearing does not constitute an "appearance" under the Speedy Trial Act. However, the Ninth Circuit, expressly noted that the Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended at 11(1981) expressly provides that for purposes of the Speedy Trial Act, an "appearance" "may be indicated not only by a physical appearance in court, but also by formal entry of an appearance …." *See also, United States v. Rojas-Contreras,* 474 U.S. 231 (1985) (Clock starts under §3161(c)(2) with the appearance of counsel or if the defendant expressly elects to proceed *pro se*).

Additionally, in response to the government's claim that the statutory claim should be ignored because there was no physical appearance, surely it is axiomatic that the government cannot benefit from its conduct in preventing Bilzerian from appearing or even from failing to facilitate his physical appearance when such facilitation surely was within its control, as even the Lachman email exchange makes clear. Additionally, there is no reason Bilzerian could not have been offered the opportunity to appear by video as permitted by Rule 10(c) of the Federal Rules of Criminal Procedure as the other defendants in this case did. *See United States v. Crooker,* 2011 WL 147687 (D. Mass. Jan. 18, 2011) ("Appearance" under §

3161(c)(1) does not require a physical appearance and can even include a waiver of arraignment; key is indication of intent to plead not guilty and defend the case").

Bilzerian unequivocally entered his *pro se* Notice of Appearance (and request for an Order requiring the government to facilitate his physical appearance before the Court for trial) on October 29, 2025 (Dkt. 141). Well more than 70 days of non-excluded time has passed and had passed by the time in March 2026, the government claims to have pursued extradition. The Speedy Trial Act must be strictly applied as to the time periods set within it. *United States v. Gabrielian*, 2024 WL 2384148, *12, *14 (D. Md., May 22, 2024) (citing to *United States v. Hart*, 91 F.4th 732 (4th Cir. 2024).

Of course, when considering the Sixth Amendment constitutional right to a speedy trial, the delay is "generally measured from the 'time of the indictment to the time of trial.'" *U.S. v. Flores-Vasquez*, 799 F. Supp. 3d 927, 933 (N.D. Cal. 2025), *quoting from U.S. v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003). "Courts have also measured delay from the date of indictment to the time of arrest or initial appearance" *Flores-Vasquez*, *Id*., citing *United States v. Espinoza-Ruelas*, 753 F. Supp. 3d 830, 833 (N.D. Cal. 2024) (measuring delay between indictment and arrest); *U.S. v. Gonzalez-Martinez*, 634 F. Supp. 3d 853, 863 (E.D. Cal. 2022) (same).

**<u>Applicable Legal Principles</u>**

It is among the most basic principles in the American criminal justice system that when the government indicts someone, it must pursue a defendant with reasonable diligence, and it has the primary responsibility to ensure that he is brought to trial. *See Doggett v. United States*, 505 U.S. 647, 656-657 (1992); *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008); *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993). As will be discussed below, the Second Circuit has recognized the fundamental importance of speedy trial rights and the government's obligations when a defendant is unable on his own to enter the country to appear and

has dismissed the indictment when the government fails to meet its obligations in this regard. *See United States v. Salzmann,* 548 F.2d 395 (2d Cir. 1976).

The Sixth Amendment guarantees that criminal defendants shall enjoy "the right to a speedy trial." U.S. Const. amend. VI., *Doggett v. United States*, 505 U.S. 647, 651 (1992). To determine whether a defendant's Sixth Amendment speedy trial right has been violated, courts balance the following four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 530 (1972).

None of these four factors is either necessary or sufficient, individually, to support a finding that a defendant's speedy trial right has been violated. *United States v. Mendoza,* 530 F.3d 758, 762 (9th Cir. 2008) (*citing Barker*, 407 U.S. at 533). Rather the factors are related and "must be considered together with such other circumstances as may be relevant." *Id.* Further, the balancing of these factors, and other relevant circumstances, "must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Mendoza,* 530 F.3d at 762.

**A. Length of Delay**

For constitutional speedy trial claims, generally, the length of the "delay is measured from 'the time of the indictment to the time of trial.'" *United States v. Gregory,* 322 F.3d 1157, 1162 (9th Cir. 2003) (quoting *United States v. Sears, Roebuck & Co.,* 877 F.2d 734, 739 (9th Cir. 1989)). Courts have also measured delay from the date of the indictment to the time of arrest or initial appearance. *See, e.g., United States v. Espinoza-Ruelas*, 753 F. Supp. 3d 830, 838 (N.D. Cal. 2024) (measuring delay between indictment and arrest; Indictment dismissed); *United States v. Gonzalez-Martinez*, 634 F. Supp. 3d 853, 863 (E.D. Cal. 2022) (same; Indictment dismissed); *United States v. Flores-Vasquez,* 2025 WL 2597030, at *2 (N.D. Cal. Sept. 8, 2025) (same; Indictment dismissed).

If the length of delay is long enough to be considered presumptively prejudicial, an inquiry into the other three factors is triggered. *Barker,* 407 U.S. at 530. Generally, a delay of more than one year is presumptively prejudicial. *See Gregory,* 322 F.3d at 1161–62. Indeed, even a six-month delay is sufficient to trigger inquiry into the three other *Barker* factors. *See United States v. Simmons*, 536 F.2d 827 (9th Cir.), *cert denied*, 429 U.S. 854 (1976).

In this case, the indictment was filed on September 26, 2024, the first superseding indictment was filed September 30, 2025, and the trial is scheduled to commence October 19, 2026.

696 days have passed between the indictment and this filing. 754 days will have passed between the indictment and the scheduled trial date. Not one day has ever been excluded by the district court as to Bilzerian for any cognizable reason.

The government has never served Bilzerian with the indictment or any of the 9TB of discovery in this case, nor has it been willing to cooperate with his own efforts to appear for trial despite having procured an indictment against him nearly two years ago. The government has long been on notice that it is vitally important to immediately upon indictment seek the appearance of a defendant living overseas or risk violating his constitutional and statutory Speedy Trial rights, resulting in a dismissal of the indictment.[11] The Court should find that this delay creates a presumption of prejudice and triggers an inquiry into the other three factors. The

[11] DOJ Criminal Resource Manual §602 (archived): "Some courts have held that the Speedy Trial Clause of the Sixth Amendment or the Speedy Trial Act require the government to make a diligent good-faith effort to bring the defendant to trial promptly; in the context of extradition, this means that the government is obligated to seek the extradition of a fugitive as soon as his or her location becomes known unless the effort would be useless. *E.g. United States v. Blanco*, 861 F.2d 773 (2d Cir. 1988), *cert. denied*, 489 U.S. 1019 (1989); *United States v. Pomeroy*, 822 F.2d 718 (8th Cir. 1987); *United States v. Walton*, 814 F.2d 376 (7th Cir. 1987). Consequently, the prosecutor should contact the Office of International Affairs as soon as the whereabouts of a fugitive or the target of an investigation is known. *See also* JM 9-15.225. [cited in JM 9-15.200]"

government acknowledges that this period of delay is sufficient to trigger inquiry on the other factors (Dkt. 180 at 11).

### B. Reason for the Delay[12]

It is the government's obligation to pursue a defendant and bring him to trial. *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993); *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008) ("The government has the primary, though not exclusive, responsibility to ensure that the defendant is brought to trial."). The government's obligation arises from the Sixth Amendment to the Constitution and under the Speedy Trial Act and it is a function of fairness to the defendant and to protect community interests. *U.S. v. Fernandes*, 618 F. Supp. 2d 62, 74 (D.D.C. 2009). "The defendant has no duty to bring himself to trial;" the State has that duty. *Barker v. Wingo*, 407 U.S. 514, 527 (1972); *Fernandes, Id.*

As the Court wrote in *Dickey v. Florida*, 398 U.S. 30, 50 (1970), quoting Judge Weinfeld in *U.S. v. Dillon*, 183 F. Supp. 541, 543 (S.D.N.Y. 1960):

> "I do not conceive it to be the duty of a defendant to press that he be prosecuted upon an indictment under penalty of waiving his right to a speedy trial if he fails to do so. It is the duty of the public prosecutor, not only to prosecute those charged with crime, but also to observe the constitutional mandate guaranteeing a speedy trial. If a prosecutor fails to do so, the defendant cannot be held to have waived his constitutional right to a speedy trial."

The government must pursue a defendant with reasonable diligence and if it fails to do so prejudice is presumed. *Doggett*, 505 U.S. at 656-57. While the government is not required to "make heroic efforts" to locate a defendant who is purposefully avoiding apprehension, *Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993), the government is considered negligent when the defendant is not attempting to avoid detection, and the government makes no serious effort with reasonable diligence to find him. *Mendoza*, 530 F.3d at 762–63. Such negligence "falls on the

[12] The length of the delay is to have "little bearing" on the consideration of the reason for delay. *Flores-Vasquez*, 799 F. Supp. 3d at 935, n.6.

wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657. [13] Here, Bilzerian asserts that the government's failures were much worse than mere negligence, in light of all of his affirmative requests of them and of the Court to facilitate his appearance. The fact that he made inquiry about conditions of release or anything else is completely irrelevant to the government's constitutional obligation to bring him to trial.

Here, Bilzerian has been openly residing and working in the same location in St. Kitts since 2011. Notably, in October 2024, nearly two years ago, government counsel was able to easily and promptly effectuate service on Bilzerian in St. Kitts of the complaint in the related SEC Case. The filings of the SEC Case and the Indictment in this case were coordinated, and occurred one day apart, such that there is no explanation for the government's failure to serve Bilzerian in this case. In addition, the electronic case management docket sheet in the SEC Case indicates Bilzerian's *pro se* status and includes his email address, mailing address and phone number. When counsel for the other defendants in this case asked AUSA Pang what, if anything, the government was doing to have Bilzerian present at trial, Pang responded that the government was "looking for" him. However, the government has known exactly where Bilzerian is and how to reach him at all times relevant to

---

[13] No one is suggesting the government is required to go to "heroic efforts" to pursue a defendant it has indicted; "[H]owever, if the defendant is not attempting to avoid detection and the government makes no serious effort to find him, the government is considered negligent in its pursuit." *United States v. Espinoza-Ruelas*, 753 F. Supp. 3d 830, 835 (N.D. Cal. 2024), quoting from *Mendoza*, 530 F.3d at 763; *United States v. Flores-Vasquez*, 799 F. Supp. 3d 927, 933-34 (N.D. Cal. 2025); *United States v. Gonzalez-Martinez*, 634 F. Supp. 3d 853, 863 (E.D. Cal. 2022) (The government has the primary responsibility to see that the defendant is brought to trial). Here the government literally did nothing either to let Bilzerian know he had been indicted, to provide him with a copy of the indictment, to provide him with any discovery, to set an appearance for him, or to help him get access to the United States to appear, knowing he could not appear here on his own. The kind of conduct and inaction by the government here "falls on the wrong side of the divide between acceptable and unacceptable reasons" for delay. *Flores-Vasquez*, *Id*. at 934, *quoting from, Doggett*, 505 U.S. at 657. *See also U.S. v. Serrano*, 829 F. Supp. 2d 910, 914 (S.D. Cal. 2011) (rejecting diligence argument).

this case. In fact, AUSA Jason Pang has communicated with Bilzerian directly by email in the SEC Case.

There is no legitimate justification for the government to have easily served Bilzerian in the SEC Case nearly two years ago, while taking no action to honor his constitutional and statutory speedy trial rights in this criminal case. The government has failed to exercise reasonable diligence and use the information readily available to it to serve Bilzerian with the indictment and facilitate his entry to the United States. The government could have, but did not, coordinate with SEC counsel to effectuate service of the indictment. In the end, Bilzerian filed his Notice of Appearance in the criminal case on October 29, 2025.

The Ninth Circuit in *Mendoza*, noted that "[e]ven though Mendoza left the country prior to his indictment, the government still had an obligation to attempt to find him and bring him to trial. After *Doggett*, the government was required to make some effort to notify Mendoza of the indictment, or otherwise continue to actively attempt to bring him to trial, or else risk that Mendoza would remain abroad while the constitutional speedy trial clock ticked. However, the government made no serious effort to do so." 530 F.3d at 763. There, "the agent in charge of Mendoza's investigation made no effort to contact Mendoza to inform him that he had been indicted" and the same is true here. *Id*. At no time has any agent or prosecutor made any effort to inform Bilzerian that he had been indicted or provide him with a copy of the indictment, despite knowing at all times where he was and that the indictment was pending, with the case against his co-defendants moving forward.

As in *Mendoza*, the Court must find that any delay is attributable to the government's negligence. Here, of course, the government has known where Bilzerian was at all times and has been in contact with him at will on a variety of subjects, knowing he is proceeding *pro se*; yet until March of 2026, it never once even made inquiry of him to follow up on his multiple requests to be permitted to

enter the country to appear. The government certainly never once in their communications with him offered to help him get into the country, despite knowing the indictment was outstanding and that he had repeatedly said he wanted to appear, applied for a visa, but could not appear on his own.

The decision in *U.S. v. Salzmann*, 548 F.2d 395 (2d Cir. 1976) makes clear that the indictment here must be dismissed. The weak attempts by the government to distinguish that decision are completely unavailing (Dkt. 180 at 14). Indeed, the government seems to have missed the significance of the decision entirely. Bilzerian's case for dismissal is far more compelling. The *Salzmann* court affirmed the lower court's dismissal of the indictment based on a failure by the government to take appropriate action in the criminal case brought against the defendant following the return of the indictment.

In *Salzmann*, the defendant had moved overseas and then received a notice that he had been drafted and had to appear for a pre-induction physical. He did not appear. Eventually, Salzmann was indicted for his failure to comply with his draft notice. A court date was set, and he did not appear because he was living overseas. He also apparently lacked the assets to pay for the trip to the States. 548 F.2d at 398. At no time following his indictment did the government make any effort to facilitate Salzmann's appearance.

Ultimately, the trial court dismissed the indictment based on his right to a speedy trial and in doing so, noted the tremendous hardship in a variety of ways a significant delay at this stage of the proceedings can have on a defendant (e.g., draining resources, causing anxiety, memories fade, and more) and on his ability to get a fair trial following such a delay. 548 F.2d at 39-400.

The trial court's decision to dismiss the indictment, affirmed on appeal, turned on the government's lack of due diligence to procure the appearance of a defendant it chose to indict, knowing he was overseas. The delay between the indictment and

any effort even to bring him before the court was inexcusable and led directly to the conclusion that the only appropriate remedy, consistent with the defendant's right to a speedy trial was the dismissal of the indictment, without any need for further inquiry related to the government's exercise of due diligence. 548 F.2d at 402-403.

Judge Feinberg's concurring opinion in *Salzmann* is especially applicable to Bilzerian's situation. Judge Feinberg emphasizes that no matter the overseas defendant's means, the government's duty to exercise due diligence to procure the defendant's presence before the court is paramount and the failure to exercise that due diligence, as in the instant case, must lead to the dismissal of the indictment against the defendant, regardless of whether the defendant had the means to travel to the U.S. or not. 548 F.2d at 403-404. The decision must be applied here for even more compelling reasons, for Bilzerian made every effort possible to appear before this Court voluntarily, despite never being served with the indictment and the complete lack of any effort by the government to help him appear before the Court or to in any way honor his constitutional and statutory rights to a speedy and fair trial. Bilzerian submitted an application for a visa to travel to the United States on January 19, 2025, and asked the government to assist him in having his visa application granted but the government declined. The email exchange with AUSA Lachman, described above, makes clear that the government could have arranged for Bilzerian's entry into the country to appear at any time over the past 23 months.

The decision in *U.S. v. Fernandes*, 618 F. Supp. 2d 62 (D.D.C. 2009) also fully supports a dismissal of the indictment here and, again, for reasons less compelling than in the instant case. In *Fernandes*, following the issuance of a sealed indictment, the defendant went to India. In contrast to the instant case, the government actually took steps to try to bring the defendant back to this country. In addition to putting the defendant's arrest information into the NCIC database, the government developed a ruse to lure the defendant back into the country. The ruse failed and the

government did nothing further to secure the defendant's return. *Id*. at 65-66. Like in the instant case, the defendant was in touch with the government from overseas; but, tellingly, the government refrained from pursuing extradition Also like in the instant case, the defendant sought help in returning to the U.S. through diplomatic channels, but in *Fernandes*, he had to apply to India for an exit visa and, unlike the actions of U.S. officials in the instant case, the Indian officials accommodated him and he returned to the U.S. where he was arrested. *Id*. at 67. *See also, U.S. v. Reynolds*, 231 Fed.Appx 629, 631 (9th Cir. 2007) (government only took steps to arrest defendant during 6 of the 56 month delay and did nothing otherwise; lodging warrant with the NCIC was not reasonable diligence).

Based on his constitutional claim, the relevant time period was from the date of the accusation against him until his trial (23 months). Emphasizing that the government has "an affirmative constitutional obligation to try the defendant in a timely manner," the court held that where extradition has not been shown to be futile, the government must timely seek extradition or risk dismissal.

There, like in the instant case, the government claimed that they were concerned extradition might be too time-consuming. *See Fernandes, Id.* at 70; Dkt 180 at 5.[14] That excuse in *Fernandes* was found to be totally unavailing, as it is here.

---

[14] The government writes in its Opposition that Bilzerian's "counsel went silent" after March 2025 (Dkt. 180 at 5). Government counsel well knows that Bilzerian has proceeded *pro se* at all times and, indeed, has contacted him directly throughout this case. Indeed, just before making its complaint about Mr. Hedding "going silent," it explains that it could not negotiate with Mr. Ram because he did not formally represent Bilzerian (Dkt. 180 at 4). Government counsel well knows Mr. Hedding did not represent Bilzerian either. *See* <u>*United States v. Velazquez,*</u> 749 F.3d 161, 170 (3d Cir. 2014*)* (rejecting reliance on attorney who never formally appeared). It claims to have applied for an INTERPOL Red Notice to locate and arrest Bilzerian as of April 2025, however, it learned at that time that there was a backlog of approximately six months (Dkt 180 at 5). This scenario has absolutely no significance in this framework, except to work in Bilzerian's favor. First, the government has known at all times where Bilzerian is and so there was no need to "locate" him. Secondly, it acknowledges a backlog of 6 months in this process, meaning it knowingly did nothing that would have any impact, if at all, for at least 6 months, knowingly sacrificing Bilzerian's speedy trial rights – and doing absolutely nothing to facilitate his entry into the country, despite knowing that he had earlier applied for a visa. Its claim now that he could have turned himself in at a port of entry certainly was never conveyed to Bilzerian and Bilzerian

(continued…)

*See also, United States v. Pomeroy,* 1987 U.S. App. LEXIS 6778 (8th Cir., May 29, 1987*)*.

In *Fernandes*, the government actually took some steps to facilitate the defendant's return. It issued him a needed new passport and worked with Indian authorities to expedite his exit visa; but a 15-month gap still transpired before the government took any steps to secure his return. The defendant, like Bilzerian, lived openly, in his own name, and the government knew how to contact him all along. On those facts, far less compelling than in the instant case, the court in *Fernandes* dismissed the indictment for a violation of his speedy trial rights. *Id*. Bilzerian would also respectfully direct the Court's attention to the decision in *U.S. v. Akindele*, 2019 U.S. Dist. LEXIS 42852 (E.D. Pa., March 14, 2019) in which the court dismissed the indictment on facts remarkably similar to the facts in *Fernandes* and not nearly as compelling as the facts in favor of dismissal in the instant case. *See also, U.S. v. Weaver*, 949 F. Supp. 2d 73 (D.D.C. 2013); *U.S. v. Boone*, 706 F. Supp. 2d 71 (D.D.C. 2010). In both cases the government took more affirmative steps than in the instant case, yet the indictment was dismissed for speedy trial rights violations.

The government's claim that this case is distinguishable from the cases cited by Bilzerian because there the government took no action and here it did (Dkt. 180 at 10-15) is demonstrably false. Extradition was available to the government at all times; but it affirmatively chose not to pursue it until 18 months after indictment and then only when it finally recognized that it might be held accountable. As noted above, Bilzerian took every step he possibly could to enter the country in order to appear for trial – far more than in any other reported case. The government literally did nothing to facilitate it, notwithstanding Bilzerian's resort to the Court to ask it to order the government to facilitate his presence.

---

could never have left on a flight out of St. Kitts without his visa unless the government took affirmative action to facilitate it. The government never did, despite Bilzerian's repeated requests and the government's false assurance to the Court that it would facilitate his entry.

**C. Assertion of Speedy Trial Right**

The third factor requires that a defendant assert his right to a speedy trial. *Barker*, 407 U.S. at 531. Bilzerian asserted his speedy trial rights in his Notice of Appearance, Dkt. No. 141, even before he was served with the indictment. There can be no dispute that Bilzerian has met this requirement. Bilzerian has not caused any of the delays in this case and has not agreed to any continuance. Moreover, as the government knows, Bilzerian applied for a visa on January 19, 2025, expressly for the purpose of being able to come before the district court to defend himself, despite the complete lack of government efforts. Counsel for Ignite contacted AUSA Jason Pang in March 2025 to seek his assistance in obtaining the approval of Bilzerian's visa application and reasonable bail conditions but he declined.

**D. Actual Prejudice**

The final *Barker* factor asks whether the defendant suffered actual prejudice because of the delay. *Barker*, 407 U.S. at 532. As noted above, courts have long recognized the inherent prejudice that inures from having an indictment hanging over a defendant's head, causing great anxiety and more and causing witness memories to fade. *Doggett*, 505 U.S. at 654. That all certainly applies here. Indeed, prejudice is presumed when the delay approaches one year. *Fernandes*, 618 F. Supp. 2d at 72; *U.S. v. Weaver*, 949 F. Supp. 2d 73, 77 (D.D.C. 2013; *U.S. v. Boone*, 706 F. Supp. 2d 71, 77 (D.D.C. 2010). *See also*, *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992) (citing *Doggett*, 505 U.S. 647) ("[I]f the government is negligent in pursuing the defendant, prejudice [under the fourth *Barker* factor] is presumed." *Mendoza*, 530 F.3d at 763. As the Supreme Court has recognized, "(E)xcessive delay presumptively compromises the reliability of a trial in many ways neither party can prove or, for that matter identify." *Doggett*, 505 U.S. at 654.

The prejudice here cannot be remedied. Providing Bilzerian with the indictment and 9TB of discovery would leave him with the Hobson's choice of

going to trial unprepared or delaying the trial even further, both solely because of the government's violation of his fundamental rights. The indictment must be dismissed with prejudice. *See United States v. Gabrielian*, 2024 U.S. Dist. LEXIS 92277, 2024 WL 2384148 (D. Md., May 22, 2024) (Dismissal with prejudice on speedy trial grounds). Of course, prejudice to a defendant caused by a denial of his speedy trial right is not confined to possible impairment of his defense. *Moore v. Arizona*, 414 U.S. 25 (1973); *U.S. v. Judge*, 425 F. Supp. 499, 504-05 (D. Mass. 1976).

**CONCLUSION**

623 days have passed between the indictment in this case and this filing. 754 days will have passed between the indictment and the scheduled trial date. Not one day has ever been excluded by the district court as to Bilzerian for any cognizable reason or for any reason at all. Courts cannot assume they would have excluded time under the Speedy Trial clock after the fact. *United States v. Gabrielian*, 2024 U.S. Dist. LEXIS 92277, *17 2024 WL 2384148 (D. Md., May 22, 2024). "The government is supposed to be pressing the case forward expeditiously at all times, not waiting for the Defendants, … or the Court to take further action." *Id*. at *18.

The indictment against Bilzerian should be dismissed with prejudice for the violation of his constitutional and statutory rights to a speedy and fair trial. Among many other reasons, this remedy is necessary to serve the important interest of deterring this kind of approach by the government. *Gabrielian*, *Id*. at *19.

The government made no effort in the lengthy time period since the indictment was returned against him to serve him with a copy of the indictment, to provide him with any of the voluminous discovery, or to assist Bilzerian in his efforts to appear before the district court. On the other hand, Bilzerian has made every effort to be able to appear including filing an application to voluntarily appear before even being served with the indictment or having any proceeding scheduled,

and asking the government to assist in the granting of his visa application which would have permitted him to travel to the United States without any cost or effort by the government. The government has done nothing to assist Bilzerian in his efforts to appear to stand trial and has completely ignored and defaulted on its own firmly established obligation to affirmatively ensure his appearance and ability to participate in all aspects of the case against him in a timely manner consistent with his constitutional and statutory rights to a speedy trial. Based on the relevant legal analysis and the application of the relevant factors discussed above, the indictment against him must be dismissed.

The government's intentional failure to act on its own and its refusal to assist Bilzerian in his efforts to appear, clearly failed to honor his right to a speedy and fair trial. At all relevant times since long before and after the indictment was returned, the government has known where Bilzerian is located.

The government's belated sham offer in late March 2026, 18 months after the indictment was filed, for the first time suggesting they would facilitate Bilzerian's appearance makes it indisputably clear that the government could have done that immediately after the indictment was filed nearly two years ago. Having Bilzerian arrested purportedly to initiate extradition proceedings eighteen months after the indictment was filed all the while knowing Bilzerian was clearly willing to voluntarily appear for trial ever since the indictment was returned indisputably demonstrates that the government could have taken that step as an alternative eighteen months earlier. Its failure since March to pursue extradition reflects its true agenda of deliberately preventing Bilzerian from attending his trial.

If the right to a speedy trial is to mean anything, having the government completely ignore its obligations to Bilzerian's detriment and for so long, requires the dismissal of the indictment with prejudice.

Respectfully submitted,

Paul a Bilzerian

Paul Bilzerian, Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Paul A. Bilzerian's Pro Se Memorandum of Law in Reply to Government's Opposition to Motion to Dismiss on Speedy Trial Grounds was filed with the Clerk of the United States District Court for the Central District of California by using the CM/ECF system. All parties were served electronically by the CM/ECF system on this 20th day of August 2026.

Paul A. Bilzerian