UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

PAUL A. BILZERIAN,

Defendant.

Case No. 2:24-cr-00569(A)-MCS-1

**ORDER RE: MOTION TO DISMISS (ECF NO. 148)**

Defendant Paul A. Bilzerian, proceeding pro se, filed a motion to dismiss the indictment against him on speedy trial grounds. (Mot., ECF No. 148.) The Court set a briefing schedule for the motion, which has been fully briefed. (Order Setting Br. Schedule, ECF No. 179; Opp'n, ECF No. 180, Reply, ECF No. 186.)[1]

## I. BACKGROUND

Defendant was indicted on September 26, 2024, along with codefendants Scott Rohleder and Ignite International Brands, Ltd. (Indictment, ECF No. 1.) Defendant was charged with conspiracy to defraud the United States, conspiracy to commit wire fraud and fraud in connection with the purchase and sale of securities, and wire fraud. (*Id.* ¶¶ 1–14.)

Defendant renounced his United States citizenship on January 23, 2019, and expatriated to Saint Kitts. (Cherney Decl. ¶ 3, ECF No. 180-13.) On October 9, 2024, shortly after the indictment was filed in this action, Government counsel contacted the Department of Justice's Office of International Affairs ("OIA") to obtain information regarding Defendant's potential extradition. (Pang Decl. ¶ 11, ECF No. 180-1.) Nearly one month later, on November 7, 2024, the Government emailed Defendant's counsel in a parallel civil action brought by the Securities and Exchange Commission regarding this action. (Pang Decl. Ex. 1, ECF No. 180-2; *see also* Pang Decl. ¶ 3.) Government counsel noted in his email correspondence that the Government had "obtained an arrest warrant" for Defendant and that the Government understood that Defendant "d[id] not intend to surrender himself pursuant to the warrant." (Pang Decl. Ex. 1.) Government counsel requested that Defendant's civil counsel "[p]lease let us know if that position has changed." (*Id.*) On November 12, Defendant's civil counsel responded that

---

[1] Duplicate versions of Defendant's reply brief and declaration in support of his reply were filed at ECF No. 185. The filings do not differ in any way material to this Order. For ease of reference, the Court refers to the later-filed reply brief and accompanying declaration at ECF Nos. 186 and 187 throughout this Order.

Defendant "has been a citizen and resident of St. Kitts" for "several years" and "currently has no visa or permission to enter the United States," although Defendant "wishes to face the U.S. charges head on and participate fully in the USAO proceedings in Los Angeles." (Pang Decl. Ex. 2, ECF No. 180-3.) Counsel requested terms of surrender, contending that "pretrial detention would be unreasonable," and asking "that the government stipulate to terms of release on his own recognizance (OR), permitting continued residence in St. Kitts, and permitting unrestricted travel both within and for entering/exiting the United States," which counsel noted would "require the United States to provide . . . a standard ten-year multiple entry visa to facilitate his court appearances." (*Id.*) Counsel further requested that the Government agree to seek "no additional conditions of release other than the requirement for him to appear at all scheduled hearings and trial." (*Id.*)

On February 14, 2025, Government counsel wrote in email correspondence to Defendant's civil counsel that the Government "would obviously welcome [Defendant] returning to the United States to face the charges in this case," but noted that Government counsel was "not aware of any role [counsel] play in the visa process." (Pang Decl. Ex. 3, ECF No. 180-4.) Government counsel further stated that because Defendant's civil counsel was not representing defendant in this criminal action, it would not "be appropriate for us to negotiate bond terms." (*Id.*)

Approximately one month later, a different attorney representing Defendant contacted Government counsel, requesting a form and asking that the Government apprise counsel of "what other steps we need to take so we can begin the process of complying with appropriate bond conditions." (Pang Decl. Ex. 4, at 1, ECF No. 180-5; *see also* Pang Decl. ¶ 6.) In response, Government counsel sent a financial disclosure form for Defendant to complete. (Pang Decl. Ex. 4, at 1.) In subsequent correspondence, defendant's counsel declined to complete the form, contending that it was "irrelevant under the circumstances where flight issues are entirely mitigated by [Defendant's] herculean efforts to appear for trial voluntarily." (Pang Decl. Ex. 5, ECF No. 180-6.)

Defendant's counsel requested that the Government agree to stipulate to Defendant's release on his own recognizance or under a "nominal unsecured bond," stating that "[o]therwise[,] we will have to raise this issue with the Court." (*Id.*) Government counsel replied that "[g]iven in part [Defendant's] refusal to provide any financial information," the Government would not agree to an "O/R bond." (*Id.*) Defendant's counsel sent a follow-up email providing "previous financial information" that Defendant "recently submitted," and reiterating his request that the Government "agree to an O.R. release or some nominal unsecured bond to assist in getting my client into the country to attend the upcoming trial." (Pang. Decl. Ex. 6, ECF No. 180-7.) Government counsel replied that it would not "agree to O.R. release or a 'nominal' bond amount in advance." (*Id.*) Thereafter, Defendant's counsel proposed "a signature bond with GPS tracking." (Pang. Decl. Ex. 7, at 3, ECF No. 180-8.)[2] Government counsel replied, stating that Defendant's alleged "history of lying about his finances . . . and other issues do not lend themselves to an agreement for a [sic] OR bond," and observing that Defendant's counsel would be able to make arguments regarding Defendant's risk of flight at Defendant's initial appearance before a magistrate judge. (*Id.*) Government counsel also noted that he understood Defendant had applied for a visa to enter the United States, which was "outside of [Government counsel's] immediate control and jurisdiction," and requested that Defendant's counsel inform the Government "if and when his visa is approved." (*Id.* at 2.)

In May 2025, Government counsel consulted with OIA regarding Defendant's potential extradition from Saint Kitts. (Pang Decl. ¶ 12.) Government counsel understood, based on consultations with OIA, that extradition "would be unlikely to succeed and, in any event, would likely be a lengthy and contested process with uncertain prospects of success" under existing Saint Kitts law. (*Id.*) Subsequently, on May 22, 2025, Saint Kitts enacted a new extradition statute. (*Id.* ¶ 13.) On September

---

[2] Pinpoint citations refer to CM/ECF pagination.

30, 2025, a first superseding indictment was filed. (1st Superseding Indictment, ECF No. 123.) The Court issued an arrest warrant that same day. (Arrest Warrant, ECF No. 124.) On October 1, 2025, Government counsel "requested the samples and forms necessary to assemble the request from" OIA under the new extradition law of Saint Kitts. (Pang Decl. ¶ 14.) Government counsel developed the extradition request between October 1, 2025, and March 20, 2026, in coordination with the OIA, (*id.* ¶¶ 15–16), and on March 24, 2026, Defendant was provisionally arrested in Saint Kitts pursuant to the Government's extradition request, (*id.* ¶ 17).

While finalizing the extradition request, Government counsel contacted Defendant by email on March 17, 2026, requesting that Defendant notify the Government if he "wish[ed] to be granted permission to enter the United States to appear as a defendant" in this action, so that the Government could "facilitate [his] entry into the United States within the next few weeks." (Pang Decl. Ex. 10, at 3, ECF No. 180-11.) Defendant replied that he "submitted a visa application on January 19, 2025, to the US State Department Embassy in Barbados." (*Id.* at 2.) Defendant noted that he had filed the instant motion to dismiss, and that if the motion were granted, there would "be no need for [him] to travel to the United States," but that if the motion were "denied and affirmed on appeal," then he would "need permission to enter the United States." (*Id.*) Defendant proposed two possible options regarding his appearance:

> The easiest and most convenient way for me to enter the United States would be for the government to grant my application for a visa. If that does not happen, I have offered to arrange for the head of Security for St. Kitts to accompany me to Los Angeles, where I can be arraigned, released on my own recognizance, and fully participate in my trial where I intend to defend myself.

(*Id.*) Government counsel replied that if Defendant was willing to travel to the United States for arraignment, the Government would facilitate his entry without need for a

visa. (*Id.*) Government counsel further requested that Defendant indicate whether his willingness to travel voluntarily to the United States was "conditioned on a decision on any pre-trial motions." (*Id.*) Defendant responded with a list of six questions, one of which was whether the Government would agree to Defendant's release on his own recognizance. (*Id.* at 1.)

On April 24, 2026, after Defendant's provisional arrest in Saint Kitts, the Government provided Defendant's Saint Kitts counsel an explanation of what would happen if Defendant consented to extradition and return to the United States. (Pang Decl. Ex. 11, ECF No. 180-12.) The Government noted that it "would be willing to discuss bond conditions in advance of Mr. Bilzerian's appearance before a U.S. magistrate judge if Mr. Bilzerian provides a complete and accurate financial disclosure under penalty of perjury using the standard USAO form we previously provided," but observed that "[e]ven if an agreement is reached, whether Mr. Bilzerian is released, and on what conditions, ultimately would be the magistrate judge's decision." (*Id.* at 3.)

In the instant motion, Defendant moves to dismiss the first superseding indictment, arguing that his constitutional and statutory rights to a speedy trial have been violated due to the Government's failure to secure his presence. (*See* Mot. 1.)

## II. LEGAL STANDARD

Defendants in criminal cases have both constitutional and statutory rights to a speedy trial. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Courts balance four factors in determining whether a defendant's constitutional right to a speedy trial has been violated: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *accord United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008). "None of these four factors are either necessary or sufficient, individually, to support a finding that a defendant's speed[y] trial right has been violated." *Mendoza*,

530 F.3d at 762. "Rather[,] the factors are related and must be considered together with such other circumstances as may be relevant." *Id.* (internal quotation marks omitted).

In addition, the Speedy Trial Act requires that

> [i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). Under this statutory provision, only two events trigger the Speedy Trial Act's 70-day trial clock: the public filing of an indictment, or the first appearance of a defendant before a judge of the judicial district where the charges are pending. *See United States v. Layfield*, 96 F.4th 1095, 1097 (9th Cir. 2024) ("Under the clear language of § 3161(c)(1), only two events could trigger Layfield's seventy-day speedy trial clock: (1) the March 9, 2018 public filing of the indictment or (2) his March 23, 2018 first appearance before a judge in the CDCA.").

## III. DISCUSSION

Defendant contends that his statutory and constitutional rights to a speedy trial have both been violated. (Mot. 1.) The Court addresses each in turn.

### A. Statutory Right to a Speedy Trial

Defendant has yet to appear before a judicial officer of the Central District of California. Although Defendant filed a notice of appearance in this action, (Notice of Appearance, ECF No. 141), filing a notice of appearance does not constitute an appearance before a judicial officer within the meaning of the Speedy Trial Act, *see, e.g.*, *United States v. Chin*, No. 3:22-00087, 2022 WL 17832915, at *3 (S.D. W. Va.

Dec. 21, 2022) ("The plain language of the Speedy Trial Act requires an appearance before a judicial officer of the charging district, not an appearance by counsel via filing a motion."); *United States v. Olmos*, No. 22-20426, 2025 WL 2466035, at *2–4 (E.D. Mich. Aug. 26, 2025) (concluding that defendant did not appear before a judicial officer within the meaning of the Speedy Trial Act when the court held "a telephonic status conference with counsel only to extend the stay of the release order and schedule the bond appeal"). Accordingly, the Speedy Trial Act's 70-day limit does not yet apply to Defendant.

**B. Constitutional Right to a Speedy Trial**

Defendant also contends that his constitutional right to a speedy trial has been violated. (Mot. 1.) Accordingly, the Court applies the four-factor *Barker* test.

1. Length of Delay

"The length of the delay is a threshold factor, and a sufficiently lengthy delay necessitates an examination of the other three factors." *United States v. Alexander*, 817 F.3d 1178, 1181 (9th Cir. 2016) (internal quotation marks omitted). A defendant "must show that the period between indictment and trial passes a threshold point of presumptively prejudicial delay." *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003) (internal quotation marks omitted). "Although there is no bright-line rule, courts generally have found that delays approaching one year are presumptively prejudicial." *Id.* at 1161–62.

Here, the indictment was filed on September 26, 2024. This 23-month delay creates a presumption of prejudice and triggers an inquiry into the other three factors.

2. Reason for the Delay

"The reason for the delay is the focal inquiry." *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir. 1989). "The government has the primary, though

not exclusive, responsibility to ensure that the defendant is brought to trial." *Mendoza*, 530 F.3d at 763. "If a defendant attempts to avoid detection, the government is not required to make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension." *Id.* (internal quotation marks omitted). "However, if the defendant is not attempting to avoid detection and the government makes no serious effort to find him, the government is considered negligent in its pursuit." *Id.*

Here, the record reflects that the Government has been diligent in its pursuit of Defendant. Shortly after the indictment was filed in this action, Government counsel corresponded with Defendant's counsel in a related civil matter regarding whether Defendant was willing to surrender in this action. Though Defendant contends that he has "made every effort to be able to appear" in this action and "[t]he government has done nothing to [assist him] in [his] efforts to appear to stand trial," (Mot. 8), email correspondence between Government counsel and Defendant's civil counsel in November 2024 reflects that Defendant was only willing to surrender subject to particularized terms, including a release on his own recognizance and the ability to travel freely between the United States and Saint Kitts, (*see* Pang Decl. Ex. 2). Defendant continued to seek agreements from the Government regarding his potential pretrial release conditions in email correspondence concerning his potential surrender in February and March 2025, and in March 2026. (*See generally* Pang Decl. Exs. 3–7, 10–11.)

Further, in parallel to the parties' discussions concerning Defendant's potential surrender, the Government has pursued extradition of Defendant diligently. On October 9, 2024, soon after the indictment was filed, Government counsel contacted OIA regarding extradition of Defendant. (Pang Decl. ¶ 11.) Though Government counsel initially concluded that extradition was unlikely to be successful based on the United States' failure to extradite any individual from Saint Kitts since 2018, (*id.* ¶ 12), after Saint Kitts enacted a new extradition statute in May 2025, the Government promptly pursued extradition, (*id.* ¶¶ 13–17). As a part of that process, the Government obtained

a first superseding indictment on September 30, 2025, and worked to prepare an extradition request from October 1, 2025, to March 20, 2026. (*Id.* ¶¶ 14–16.) Pursuant to the extradition request, Saint Kitts authorities provisionally arrested Defendant on March 24, 2026. (*Id.* ¶ 17.)[3]

The Court concludes that the delay in Defendant's trial is primarily attributable to Defendant's efforts resisting his extradition and return to the United States, not the Government's negligence. Defendant has been aware of the indictment in this action since at latest November 2024. (*See* Pang Decl. Ex. 2); *compare Mendoza*, 530 F.3d at 763 (finding speedy trial violation where, inter alia, defendant "was unaware of the indictment" and "did not know that he needed to return" to the United States), *with United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993) (finding no speedy trial violation where, inter alia, "Sandoval was well aware of the indictment against him" and "skipped bail and became a fugitive to avoid prosecution"). Although Defendant has professed a willingness to return to the United States to stand trial, his conduct since the indictment was returned has indicated otherwise. Defendant conditioned his

---

[3] The parties dispute the current status of the extradition proceedings in Saint Kitts. Government counsel avers that Defendant "is presently contesting his extradition in the courts of St. Kitts, where he is represented by counsel." (Pang Decl. ¶ 17, ECF No. 180-1.) Defendant disagrees, contending that "the government purported to initiate extradition proceedings . . . but then told the court in St. Kitts that the government was not prepared to proceed and asked the court to suspend the extradition proceedings indefinitely." (Reply 20–21.) However, Defendant's contention is unsupported by the declaration he submitted from his Saint Kitts–based counsel. Defendant's counsel avers that "[t]he Director of Public Prosecutions . . . for the Government of Saint Kitts and Nevis," not counsel for the United States, "asked the court for the [extradition] proceedings to be adjourned sine die, which request was granted by the court." (Burke Decl. ¶ 5, ECF No. 187.) The Saint Kitts court requested that a U.S. Department of Justice representative attend a June 11, 2026, bail application hearing by videoconference "to get an update on whether they were pursuing the extradition," but no one appeared at the hearing, and currently, "the extradition proceedings are adjourned indefinitely." (*Id.* ¶ 9.) The record does not reflect that the Government made any affirmative request to suspend extradition proceedings.

willingness to return voluntarily upon the Government acquiescing to his preferred pretrial release terms, (*see* Pang Decl. Exs. 3–7), which forced the Government to seek the more time-intensive and challenging route of extradition. A defendant "cannot avoid a speedy trial by forcing the government to run the gauntlet of obtaining formal extradition and then complain about the delay that he has caused by refusing to return voluntarily to the United States." *United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995). The Government has also been diligent in its pursuit of extradition. After the Saint Kitts's extradition statute changed, the Government promptly began developing an extradition request. (Pang Decl. ¶¶ 11–17); *see United States v. Corona-Verbera*, 509 F.3d 1105, 1115–16 (9th Cir. 2007) (concluding that the government exercised due diligence where "extradition from Mexico on drug related charges prior to 2002 was extremely rare," but " after extradition became more likely in 2002, the government obtained an arrest warrant and diligently sought extradition"). Accordingly, the Court concludes that this factor weighs against Defendant.

3. Defendant's Assertion of His Speedy Trial Right

"Whether and how a defendant asserts his right is closely related to the other [speedy trial] factors." *Barker*, 407 U.S. at 531. "[A]lthough a finding that a defendant repeatedly asserted his speedy trial right is entitled to strong evidentiary weight under *Barker*, these assertions must be viewed in the light of his other conduct." *United States v. Lam*, 251 F.3d 852, 859 (9th Cir. 2001) (cleaned up). "[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine." *Barker*, 407 U.S. at 529.

Here, Defendant contends that he asserted his speedy trial right through his filing of a notice of appearance in which he demanded a speedy trial and moved for an order directing the U.S Attorney's Office to request that the U.S. Department of State grant his application for a visa. (Notice of Appearance 4–5.) However, Defendant's speedy trial demand and motion regarding his visa application must be weighed against his

other conduct, including his repeated efforts to condition his surrender upon his preferred pretrial release conditions. (*See generally* Pang Decl. Exs. 3–7.) Further, the Government offered in March 2026 to facilitate Defendant's entry into the United States without a visa. (Pang Decl. Ex. 10, at 2.) Defendant did not accept this offer, instead responding with a list of questions concerning, among other issues, the circumstances of his potential surrender and conditions of pretrial release. (*See id.* at 1.) These facts militate against giving weight to Defendant's assertion of his speedy trial right. *See, e.g.*, *Manning*, 56 F.3d at 1195 (concluding that a defendant's "affirmative resistance of the government's efforts to secure his presence in the United States constitute[d] an intentional relinquishment of his right to a constitutional speedy trial," and therefore the defendant could not "now complain of the delay that he himself caused"); *Lam*, 251 F.3d at 859 ("Lam's repeated assertions of his speedy trial right appear at first glance to militate in his favor. However, . . . the fact that Lam (through [his counsel]) was responsible for much of the delay and waited so long after the conclusion of the trial to file a motion to dismiss the indictment weighs heavily against him."). The Court concludes that this factor weighs against Defendant.

4. Prejudice to Defendant

The Court may presume prejudice "only if the defendant isn't responsible for the delay." *United States v. Aguirre* 994 F.2d 1454, 1457 (9th Cir. 1993). Otherwise, a defendant must show that he was actually prejudiced by the delay. *See id.* at 1458. "Actual prejudice can be shown in three ways: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." *Lam*, 251 F.3d at 859 (internal quotation marks omitted). Impairment to the accused's defense is "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

/ / /

Here, as discussed above, Defendant bears responsibility for the delay, and, therefore, is not entitled to any presumption of prejudice. *See Aguirre*, 994 F.2d at 1457–58 ("Aguirre could have, at any moment, ended the delay and avoided any prejudice caused by the passage of time. He only had to get in touch with federal authorities and tell them his whereabouts, as he promised to. Failing to assert his speedy trial right, Aguirre's inaction contributed to the delay; accordingly, he is entitled to no presumption of prejudice."). To establish actual prejudice, a defendant must be able to "credibly point to . . . specific damage to his defense stemming from the delay in his trial." *Lam*, 251 F.3d at 860. Mere speculation "regarding alleged defects in witness testimony or lost evidence" is insufficient to demonstrate actual prejudice to a defendant. *Id.*; *see also Manning*, 56 F.3d at 1194 (explaining that in the context of preindictment delay, "[g]eneralized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice" and are "too speculative").

Defendant submits that he has suffered prejudice in the form of "the inherent prejudice that inures from having an indictment hanging over a defendant's head, causing great anxiety," as well as the potential for witnesses' memories to fade. (Mot. 7; *accord* Reply 33.) But Defendant identifies no particular witnesses' recollections or other evidence that he believes will have be lost as a result of the trial delay. Accordingly, Defendant's assertion that he has suffered prejudice amounts to mere speculation. Further, Defendant does not dispute the Government's contention that much of the evidence in this action is "built on financial records, corporate filings, and email" that "can be retained almost indefinitely." (Opp'n 18–19.) While Defendant also argues that there is a substantial amount of discovery in this case that he has not received, and as a result, he has been unable to prepare for trial, (Mot. 8; Reply 33–34), the Court can set a trial schedule that ensures Defendant has adequate time to review discovery and prepare his defense.

In short, Defendant has not shown that he suffered actual prejudice from the delay.

Weighing the *Barker* factors, the Court concludes that Defendant's constitutional right to a speedy trial has not been violated.

## IV. CONCLUSION

The Court denies Defendant's motion to dismiss the indictment.

**IT IS SO ORDERED.**

Dated: August 28, 2026

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE